**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Sam PEARCE and Harold Hadesman,**
**Defendants-Appellants.**

**No. 12733.**

United States Court of Appeals
Seventh Circuit.

Feb. 29, 1960.

Julius Lucius Echeles, George F. Callaghan, and Frank W. Oliver, Chicago, Ill., for appellants.

Robert Tieken, U. S. Atty., Charles R. Purcell, Jr., Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, and KNOCH and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Defendants Sam Pearce and Harold Hadesman were charged in a two-count indictment with (1) transporting stolen furs having a value of more than $5,000 in interstate commerce from Seattle, Washington, to Chicago, Illinois, in violation of Sec. 2314, Title 18 U.S.C., and

(2) receiving, concealing and storing fur coats, moving as a part of interstate commerce from Seattle to Chicago, knowing the same to have been stolen, in violation of Sec. 2315, Title 18 U.S.C. No value was alleged in count 2, by reference to count 1 or otherwise. A trial was had by the court without a jury. Both defendants were found guilty on each of the counts and separate judgments were entered. From such judgments defendants appeal.

We conclude that the judgments must be reversed for reasons subsequently to be stated. The issues we shall discuss, which in our view are decisive, require no more than a sketchy outline of the facts. A burglary occurred in a fur salon located in a suite of rooms in the Olympic Hotel in Seattle, Washington, between the night of August 23, 1957 and the morning of August 24, 1957. Prior to that time, defendants were in Seattle where they attended a prize fight in the company of John Pearce (a brother of Sam). John Pearce conducted a pawn shop and sold two foot lockers to defendants. He testified he did not remember which of the defendants made the purchase or payment, although they were both present at the time. Defendants were together in Portland, Oregon, a distance of 180 miles from Seattle, where, on August 31, 1957, they boarded a train destined for Chicago. They shared a compartment and included in their luggage was a foot locker, not identified either as the one purchased from John Pearce or the one which was later found and which contained the stolen furs.

On September 9, 1957, defendants were seen by FBI agents driving on Mannheim Road near Grand Avenue. Pearce was driving a 1957 Oldsmobile and Hadesman was driving a Chevrolet. Both drove into a parking lot at O'Hare Field where they parked their cars side by side. Pearce opened the trunk of his automobile, in which agent Stoelting from a distance of 50 to 60 feet observed a foot locker and two suitcases piled on top of each other. Pearce closed the trunk of his car, joined Hadesman in the Chevrolet and drove away, leaving the Oldsmobile in the lot. Harry Tomaras, owner of a service station at 3101 Mannheim Road, Franklin Park, picked up the automobile that night and towed it to his station. He did this on orders from someone other than defendant Pearce. He was told by FBI agents to put the car in his garage and not permit its removal. The Oldsmobile remained there, under constant surveillance by FBI agents, from September 9, 1957 until September 17, 1957, when the trunk of the car was searched for the first time by agents acting pursuant to a search warrant. As a result of the search, a foot locker and two suitcases found in the trunk of the car were discovered to contain furs valued at more than $5,000, later identified as those stolen in the burglary in Seattle.

Hadesman was arrested at his home on September 17, 1957, on the strength of an arrest warrant issued upon complaint made by agent Evans on September 13, in which he swore that Hadesman had furs in his possession. During the trial the district attorney admitted that the complaint on which the warrant issued was defective on its face and that evidence obtained pursuant to the execution of the warrant would be improper. Thereupon, the district attorney was permitted to proceed on the premise that Hadesman's arrest was legal irrespective of the fact that the warrant was invalid.

Prior to the trial Pearce filed his petition to quash the search warrant and to suppress the evidence obtained as a result of the search of his Oldsmobile on September 17, 1957. Hadesman joined in the motion to suppress. After a hearing, both motions were denied by the court. The furs and the three pieces of luggage found as a result of the search were admitted into evidence over objections made by each of the defendants.

We shall consider the following issues: (1) whether the court erred in failing to suppress the evidence because of the insufficiency of the affidavit to support the issuance of the search warrant; (2)

whether count 2 of the indictment is defective because of a failure to allege the value of the property which defendants allegedly received, concealed and stored and (3) whether the counts are duplicitous so as to void a conviction as to both counts in absence of an election by the government on which count to proceed. Inasmuch as the judgment is to be reversed, there is no point in discussing alleged errors which might or might not occur on another trial. This is particularly true of defendants' contention that there is no proper proof of venue. Even so, we cannot resist the temptation to observe that we see no good reason for a record coming to this court with that point in dispute, particularly, as in the instant case, where any doubt could have been so easily removed.

■■ The most important issue before us, which must be decided adversely to the government, is whether the search warrant issued upon an affidavit sufficient to establish probable cause. As stated in the government's brief, "There is no question that under the Fourth Amendment to the Constitution and under Rule 41(c) of the Federal Rules of Criminal Procedure, an affidavit for a search warrant must recite facts and may not be based entirely upon information and belief." The affidavit was signed and sworn to by Raymond E. Stoelting as special agent of the FBI on September 13, 1957, before a United States commissioner. The affidavit alleged in substance that the affiant had reason to believe that an Oldsmobile car (describing the same) contained "One Dark Blue Foot Locker, 30 x 10 x 14; One Light Brown One Suiter Suitcase; One Blue Cloth Zipper Bag with White Trim," and that there was concealed therein certain property, "namely three Mink Coats and forty-six Mink Stoles and Jackets, having a value in excess of $5,000.00, stolen from the Olympic Hotel, Seattle, Washington, which have been unlawfully transported from Seattle, Washington, to Chicago, Illinois, in violation of Section 2314, Title 18, United States Code."

The affidavit continued as follows: "And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: That your Affiant, Raymond E. Stoelting, on information and belief, believes that three Mink Coats and forty-six Mink Stoles and Jackets were stolen from the Olympic Hotel, Seattle, Washington, on or about August 23, 1957; that your Affiant on the basis of confidential information, from a source which in the past has proved reliable, is advised that said three Mink Coats and forty-six Mink Stoles and Jackets were concealed in one dark blue foot locker, 30 x 10 x 14, one light brown one suiter suit case, and one blue cloth zipper bag with white trim, and left Seattle, Washington, August 30, 1957, for Chicago, Illinois, in the custody of Sam Pearce and Harold Hadesman; that your Affiant on September 9, 1957, saw in the trunk of a 1957 Oldsmobile Convertible Hardtop, color cream and blue, bearing 1957 Florida license No. IW61330, registered in the name of S. Pearce, one dark blue foot locker, 30 x 10 x 14, one light brown one suiter suit case and one blue cloth zipper bag with white trim and has kept said car and the trunk of said car under surveillance until September 13, 1957, without said trunk being opened or said luggage removed."

■ Prior to the hearing on the motion to suppress the evidence, the court, on defendants' motion, entered an order requiring the government to disclose the identity of the informer or informers who furnished the FBI with the matters referred to in the affidavit as "confidential information, from a source which in the past has proved reliable." In this connection, see Roviaro v. United States, 353 U.S. 53, 61, 77 S.Ct. 623, 1 L.Ed.2d 639. In response to this order, the government stated that the informant referred to in the affidavit was John Pearce, of Seattle, Washington. The court heard extensive evidence bearing

upon the asserted falsity of the affidavit and whether the affiant had personal knowledge of the matters alleged in the affidavit. That such a hearing was proper is hardly open to question. Giordenello v. United States, 357 U.S. 480, 486–487, 78 S.Ct. 1245, 2 L.Ed.2d 1503.

The government in its brief states, "This contention [that the affidavit was based on hearsay] squarely puts before the court the issue of whether, in a case involving vehicles rather than fixed premises, probable cause for a search may be based upon hearsay evidence not within the personal knowledge of the agents making the affidavit for a search warrant. And this case illustrates why the rule must be that hearsay evidence is competent for such a purpose." The issue, however, as applied to the facts of this case is not as simple as the government would have us believe. There is some confusion in the record as to the precise manner in which the information asserted in the affidavit was obtained by Stoelting. It is certain by his own testimony, however, that he received no information from John Pearce; in fact, he had never met or talked with him. He testified that he received the information from his immediate superior, Frank Stefanak. The latter testified that he had never met or talked with John Pearce but had obtained the information from Chester Crissman, an agent connected with the Seattle office of the FBI. Crissman testified that the confidential informer mentioned in the affidavit was John Pearce, with whom he talked personally, and that the information obtained by him from John Pearce was telephoned to the Chicago office of the FBI. Obviously, the statement in the affidavit that Stoelting obtained the information "from a source which in the past has proved reliable" is false. More than that, the information obtained from John Pearce by Crissman was not "from a source which in the past has proved reliable" because neither Crissman nor any of the other agents had previously known or talked with Pearce.

Thus, we have a situation where agent Stoelting, contrary to what he alleged in his affidavit, received the information from his superior, Frank Stefanak, who received the information by telephone from Chester Crissman of the Seattle office, who received it from John Pearce, whom the government under compulsion of a court order named as the informer referred to in the affidavit.

The government in support of the sufficiency of the affidavit cites numerous cases. The most important, so it is asserted, are Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, and United States v. Guido, 7 Cir., 251 F.2d 1. These cases are readily distinguishable on their facts and no good purpose could be served in discussing them in detail. The government in its brief states, "The Draper case is particularly pertinent to the facts in the case at bar." This is wishful thinking. The facts of that case, so we think, are as dissimilar from those of the instant case as is daylight from dark. There, the court sustained the right of an agent to make an arrest without a warrant and the subsequent search and seizure made incidental thereto. The court in Draper, referring to the evidence offered on the motion to suppress evidence, stated (358 U.S. at page 309, 79 S.Ct. at page 331):

"It established that one Marsh, a federal narcotic agent with 29 years' experience, was stationed at Denver; that one Hereford had been engaged as a 'special employee' of the Bureau of Narcotics at Denver for about six months, and from time to time gave information to Marsh regarding violations of the narcotic laws, for which Hereford was paid small sums of money, and that Marsh had always found the information given by Hereford to be accurate and reliable. On September 3, 1956, Hereford told Marsh that James Draper (petitioner) recently had taken up abode at a stated ad-

dress in Denver and 'was peddling narcotics to several addicts' in that city. Four days later, on September 7, Hereford told Marsh 'that Draper had gone to Chicago the day before [September 6] by train [and] that he was going to bring back three ounces of heroin [and] that he would return to Denver either on the morning of the 8th of September or the morning of the 9th of September also by train.' Hereford also gave Marsh a detailed physical description of Draper and of the clothing he was wearing, and said that he would be carrying 'a tan zipper bag,' and that he habitually 'walked real fast.' "

Marsh, accompanied by another officer, went to the Denver station on the morning of September 9, 1956, where, alighting from an incoming Chicago train, there was a man having the exact physical attributes, wearing the precise clothing and carrying a tan zipper bag, as described by the informer. At that point the defendant was arrested and searched.

The great contrast between the facts of Draper and those here is self-evident. Here, the alleged "confidential information" was not only relayed three or four times from one agent to another but when the source which in the past had "proved reliable" was finally divulged it was found to be a stranger previously unknown to any member of the relay team.

In Brinegar v. United States, supra, the facts are even further removed from those of the instant case. There, the Supreme Court, following the rule previously announced in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, reasoned that a lesser degree of proof was necessary to establish probable cause for an arrest without a warrant of the driver or occupant of an automobile moving on a public highway. However, the reason for such a relaxed showing, if such it may be called, is of no benefit to the government here. This is so for the reason

that the Oldsmobile described in the affidavit had been under the surveillance of the FBI from September 9, 1957 until it was searched September 17, 1957. It was not being operated on the highway and there was no basis for fear on the part of officers that it would be. This is evidenced by the fact that the affidavit for search warrant was not made until four days after the car had been placed in the garage, and the search warrant was not executed until four days after its issuance.

In United States v. Guido, supra, this court, upon the authority of Brinegar, 338 U.S. 160, 69 S.Ct. 1302, sustained the sufficiency of an affidavit for search warrant which was based in part upon hearsay evidence that certain information had been obtained from an informer. However, contrary to the situation here, there is no reason to doubt but that the allegation in that case was true, that is, that the information had been received as alleged. More than that, the affidavit contained allegations within the personal knowledge of the affiant, which we held sufficient to show probable cause. (For a statement of the facts see 251 F.2d page 3.) This case, like the others relied upon, is of no benefit to the government here.

The government emphasizes that the affidavit also contains a statement of facts within the knowledge of the affiant. Particularly is this so as to the allegation that the affiant on September 9, 1957 saw certain described luggage in the trunk of the Oldsmobile. Both John Pearce, the alleged informer, and agent Crissman positively testified that the first conversation between them was on September 11, 1957. The fact that the agents had the Oldsmobile under surveillance two days before acquiring the information alleged in the affidavit strongly indicates, as defendants suggest, that the information upon which the agents acted was acquired by some manner and means not disclosed in the affidavit or by the evidence heard on the motion to suppress.

In our judgment, the affidavit for search warrant was insufficient to justify the issuance of a search warrant, and the search and seizure made pursuant thereto were unlawful and in violation of the constitutional rights of the defendants. It follows that the evidence obtained as a result of such search should have been suppressed.

Defendants contend that count 2 of the indictment is fatally defective because of the absence of an allegation, by reference or otherwise, that the property (furs) alleged to have been received and concealed by defendants had a "value of $5,000 or more." Title 18 U.S.C. § 2315, upon which count 2 is predicated, reads:

"Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money *of the value of $5,000 or more* \* \* \* moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen \* \* \*." (Italics supplied.)

The government in its brief states, "Candor requires us to admit that there apparently is no authority for the proposition that count 2 of this indictment is good." The same candor requires this court to state that no authority is necessary in support of the proposition that it is not good. It is fundamental that a charge must allege all facts essential to constitute an offense. A "value of $5,000 or more" is an essential element of the offense. In Stern v. United States, 6 Cir., 204 F.2d 647, 649, the court in an analogous situation (referring to Sec. 2314 upon which count 1 in the instant case is predicated) stated:

"It will be observed that the goods transported in interstate commerce must possess a value of $5,000, or more, as an essential or jurisdictional ingredient of the offense defined."

Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., provides:

"The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

The government advances a specious argument in support of this count. It contends in effect that because the value was properly alleged in count 1, which was predicated upon Sec. 2314, no one could have been "in the dark," that it does not appear that defendants were prejudiced or misled by the omission and that the required proof as to value was made. Obviously, this argument misses the point and is of no aid in support of the legal sufficiency of the charge.

In its argument before the district court, in an attempt to distinguish this court's opinion in United States v. Gordon, 7 Cir., 253 F.2d 177, the government reveals its untenable position. In that case we held counts of an indictment insufficient for failure to allege the value of goods unlawfully possessed. The provision involved was Title 18 U.S. C.A. § 659, which made value the determining factor as between a felony and a misdemeanor. Counsel in his argument before the district court on this point conceded, and properly so, that under Sec. 2315, "There is no federal offense whatsoever if the value of the goods is not in excess of $5,000," and "In this case, if they are of a value of $4,999.99, there is no federal violation." Counsel stated, "I have no quarrel with the Gordon decision as to the application in a situation involving a statute which provides for two crimes, a felony and a misdemeanor, but I do not believe that the law is applicable to this particular statute."

If an allegation as to value is essential so that a defendant may know whether he is charged with a felony or a misdemeanor, as we held in Gordon, it would appear equally essential under a statute which defines an offense only if there is a value of $5,000 or more. We think the

government would not dispute but that the prosecution would fail without proof of value or even with proof of value of less than $5,000. It is no less essential, however, that the requisite value be alleged than that it be proven. In our judgment, count 2 is fatally defective and the judgment entered thereon is a nullity.

Defendants also pose the issue, "Can the defendants be charged and convicted in separate counts alleging both a transportation of stolen furs and receiving and storing them after they were transported?" It is doubtful if there is any occasion to consider this issue, in view of our holding that count 2 of the indictment is bad for failure to state an offense. However, we shall decide the issue as a matter of precaution rather than of necessity. We know of no case where the question has been raised or decided under the statutory provisions here involved, but there are a number of cases which by analogy are determinative.

Sec. 2312, Title 18 U.S.C.A., of the National Motor Vehicle Theft Act proscribes the transportation of stolen vehicles in interstate commerce, and Sec. 2313 of the same Act proscribes the sale, receipt or concealment of a stolen automobile moving in or a part of such commerce. The contention has often been made that a person who transports under Sec. 2312 and receives under 2313 cannot be convicted under both sections, on the premise that only a single offense has been committed. The contention often, and universally as far as we are aware, has been rejected by the courts. Doll v. Johnston, 9 Cir., 95 F.2d 838; Lindsay v. United States, 10 Cir., 134 F.2d 960, 961; Pifer v. United States, 4 Cir., 158 F.2d 867, 868, and Woody v. United States, 6 Cir., 258 F.2d 535, 536, affirmed per curiam 359 U.S. 118, 79 S.Ct. 721, 3 L.Ed.2d 673. The question decided in those cases is precisely the same as that raised here, and the reasoning employed and result reached are of compelling force. The defendants' contention on this point is rejected.

As previously indicated, a number of other contentions are advanced by defendants which need not be discussed. The judgments must be and are reversed and the cause remanded for any further proceedings not inconsistent with this opinion.

Reversed.