**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eddie UPSHAW et al., Defendants-Appellants.**

**No. 28808.**

United States Court of Appeals, Fifth Circuit.

July 9, 1971.

Rehearings Denied Sept. 3, 1971.

Arthur Parker, Birmingham, Ala., for Upshaw.

Fred Blanton, Jr., J. Howard Perdue, Jr., Birmingham, Ala., for Davis.

Demetrius C. Newton, F. Don Siegal, Birmingham, Ala., for Bethune.

Louis Bethune, pro se.

Wayman G. Sherrer, U. S. Atty., R. Macey Taylor, Melton L. Alexander, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before THORNBERRY and GODBOLD, Circuit Judges, and BOOTLE, District Judge.

GODBOLD, Circuit Judge:

Morris Davis, Louis Bethune and Eddie Upshaw were convicted by a jury of conspiracy to transmit forged instruments in interstate commerce, 18 U.S.C. § 371, and Bethune and Upshaw of actually transmitting forged instruments in interstate commerce, 18 U.S.C. § 2314. We affirm as to Upshaw and reverse as to Davis and Bethune.

We summarize briefly the background facts in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941). Defendant Bethune told Frederick McIver, then on parole for robbery, of a scheme with several other men to print and cash forged checks to be drawn on reputable business establishments and made to the order of fictitious payees. McIver was soon initiated into the scheme along with defendant Upshaw. Also included in the intrigue were Ernest Galloway, James March, and Phil Welch, who were government witnesses at the trial and are not involved in this appeal.

Defendant Davis operated a well-equipped printing establishment in Birmingham, Ala., known as Economy Press. An accomplished printer, Davis utilized his shop to print counterfeit checks and identification documents to be used by the group in their scheme. Among the counterfeit checks were checks drawn by Louisville & Nashville Railroad payable through the Citizens Fidelity Bank & Trust Company of Louisville, Kentucky, and drawn by Long Island Railroad payable through Chemical Bank and Trust Company of New York City. Identification cards printed included temporary Alabama driver permits, Birmingham Public Library cards, and Social Security cards.

The group, excluding Davis, travelled by car and plane to the states of Georgia, Tennessee, Kentucky, South Carolina, and New York to negotiate the checks and receive the proceeds. Davis, besides doing the printing work, used his American Express credit card to rent automobiles for the group in their check-passing activities.

On June 24, 1968 several members of the group were arrested and, pursuant to a search warrant, a search was made

of the premises of Davis' print shop which disclosed a large quantity of temporary Alabama driver permits bearing the same number as those used by the group as means of identification when passing the checks, and blank checks. Davis' motion to suppress evidence seized in the search, on grounds of lack of probable cause, was denied after hearing. Various seized items were admitted into evidence at trial.

### Morris Davis

The court erred in overruling Davis' motion to suppress. The warrant was issued on the basis of an affidavit, set out in the margin,[1] by FBI Agent Emmons, which rested upon information obtained from an informant who, it was later revealed, was McIver. In a lengthy hearing McIver was offered as a witness by the government and Emmons by the defense, and both testified without objection to their doing so. Their testimony was consistent in almost all respects.

McIver testified that he did not know from what source the group obtained their identification documents or checks, only that he received his from Bethune. He did not know Davis and would not have recognized him "had he been written upon the sky." Nor had he ever been to Davis' shop; in fact, he did not even know the name of it. He did not know whether Davis printed the checks, but only suspected that he did. McIver explained the factors which caused him to suspect Davis, but the existence of grounds for his suspicion do not alter the fact that it never was more than a suspicion. He stated that he did not tell Emmons that Davis was the printer, or that the specific items mentioned in the affidavit were at Economy Press.

Emmons confirmed that all McIver conveyed to him about Davis' printing the checks was a suspicion, and that

---

1. "That he has reason to believe that on the premises known as the Economy Press, Inc., 3204–A 12th Avenue North, Birmingham, Alabama, there is now being concealed certain property, namely, counterfeit Louisville and Nashville Railroad check forms, Southern Bell Telephone Company check forms, Long Island Railroad check forms, Allstate Insurance Company check forms, Citizens and Southern Banks in Georgia money order forms, Alabama Power Company check forms, Joe Money Machinery Company check forms, IBM check forms, International Harvester check forms, printing plates used for printing said check and money order forms, check paper on which check and money order forms are printed, counterfeit American Automobile Association cards, American Telephone & Telegraph identification cards, temporary Alabama drivers' licenses, L & N Railroad badges, and any printing plates used for printing these items; books and records pertaining to the preparation and printing of said material which were prepared and printed by Morris O. Davis, owner, Economy Press, Inc., and which checks were cashed by Phil Welch, Jr., Eddie Otis Upshaw, Frederick L. McIver, Earnest Galloway, James Edward March, and others, in New York, Kentucky, Tennessee, Georgia, South Carolina, Mississippi, and Alabama, using identification documents printed by Morris O. Davis, said checks having traveled interstate in violation of Title 18, Section 2314, U.S. Code.

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

"A reliable informant stated that Morris O. Davis, owner, Economy Press, Inc., printed said check forms and prepared printing plates from which said check forms were printed; that Morris O. Davis also prepared plates and printed therefrom identification documents used in cashing said checks; that the said Morris O. Davis presently maintains at Economy Press, Inc., said check forms, identification documents and printing plates. This informant has been working with the undersigned for approximately one week and has furnished reliable information as follows:

"1. Informant stated that one Phil Welch, Jr., had cashed counterfeit Southern Bell Telephone Company checks. Welch furnished a signed statement admitting that he had cashed the checks.

"2. Informant stated that Earnest Galloway had cashed counterfeit Louisville & Nashville Railroad checks. Galloway admitted in a signed statement cashing a counterfeit L & N check at Butrus Food Center, Birmingham, Alabama."

McIver did not purport to know that Davis printed them. He acknowledged that McIver did not tell him that the items specified in the affidavit were at the shop. Emmons testified further that McIver had not been working with him for approximately a week as stated in the affidavit, but that he had two interviews with McIver over a period of only three to three and a half days before the arrest.

██ Purged of its erroneous statements, the affidavit was wholly lacking in facts tending to show that Davis was printing checks or identification documents or that any of the documents were on the premises of the print shop. Stripped of its incorrect assertions, the affidavit became like that in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), consisting of nothing more than the bare statement of affiant's belief and cause to suspect that items were in a specified location. Mere affirmance of belief or suspicion is not enough. *Id.* at 47, 54 S.Ct. at 13, 78 L. Ed. at 162. *See also* Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).[2]

It is not necessary in this case for us to reach the question of whether a defendant is entitled to a hearing to test the underlying factual validity of the affidavit on the basis of which a warrant has been issued (as opposed to the affidavit's sufficiency if taken as true). And, it is equally unnecessary to decide what preliminary requirements, if any, a defendant must meet after he requests a hearing in order to demonstrate that there is an authentic issue of fact which will justify such a hearing. These questions have been neither considered by the District Court nor briefed to us on appeal.[3] In this instance the court held

---

2. Arguably Emmons' affidavit might be sufficient to establish that McIver was a reliable informant, because it said that what the informant had related concerning Welch and Galloway dovetailed with written statements obtained from those two men. But the substantive information asserted to have been given by the informer to the affiant turned out never to have been given at all.

3. While the Supreme Court has discussed extensively the requirements which an affidavit must meet to establish probable cause, it has not determined the extent of the defendant's right to test the accuracy of its allegations. A commentator states the Supreme Court has denied certiorari in two state cases raising the issue, and has declined to review one federal case. Bak v. Illinois, 400 U.S. 882, 91 S.Ct. 117, 27 L.Ed.2d 121 (1970); Mitchell v. Illinois, 400 U.S. 882, 91 S.Ct. 117, 27 L.Ed.2d 120 (1970); Stanley v. United States, 400 U.S. 936, 91 S.Ct. 234, 27 L.Ed.2d 242 (1970); *see* Kipperman, Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence, 84 Harv.L.Rev. 825 (1971).

The opposing considerations have been widely discussed. Kipperman, *supra*; Mascolo, Impeaching the Credibility of Affidavits for Search Warrants: Piercing the Presumption of Validity, 44 Conn. B.J. 9 (1970); *Note,* Testing the Factual Basis for a Search Warrant, 67 Colum.

L.Rev. 1520 (1967); *Note,* Criminal Procedure: Search and Seizure: Right to Challenge Truthfulness of Affidavit for Warrant: Burden of Proof: People v. Alfinito, 51 Cornell L.Q. 822 (1966); *Case Note,* Criminal Law—Defendant's Right to Controvert a Warrant Valid on Its Face, 34 Fordham L.Rev. 740 (1966).

Older cases generally have prohibited the defendant from challenging the affidavit. *See, e. g.,* United States v. McKay, 2 F.2d 257 (D.C.Nev.1924); United States v. Brunett, 53 F.2d 219 (W.D. Mo.1931). Some of the more modern cases seemingly have allowed such a challenge. United States v. Roth, 391 F.2d 507 (7th Cir. 1967); United States v. Gillette, 383 F.2d 843, 848–849 (2d Cir. 1967) (dicta); United States v. Freeman, 358 F.2d 459, 463 n. 4 (2d Cir.), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966) (dicta); King v. United States, 282 F.2d 398, 400 n. 4 (4th Cir. 1960) (dicta); United States v. Pearce, 275 F.2d 318 (7th Cir. 1960).

There are numerous, and countervailing, considerations in touching a balance between the protection of basic Fourth Amendment rights and the sound, smooth and swift workings of the court system. *See* United States v. Halsey, 257 F.Supp. 1002 (S.D.N.Y.1966); Wright, Federal Practice and Procedure, § 673, at p. 107;

a hearing, appropriately convened, on the issue of probable cause. We are called upon to review the consequences of that hearing, after the facts have come out. The evidence, fully explored at the hearing, revealed that what was said in the affidavit was in vital respects erroneous, and that the facts, when truly and correctly stated, would not support the issuance of a warrant.

\* \* \* the warrant must contain allegations that go beyond the affiant's mere suspicion or his repetition of another's mere suspicion. The warrant is a check upon the officer's zeal in "the often competitive enterprise of ferreting out crime," and hence it must be tested against objective facts presented to a detached magistrate. Gonzales v. Beto, 425 F.2d 963 (5th Cir. 1970).

■■ Once it came to the attention of the court, from the testimony at the motion to suppress hearing, that evidence had been seized on the basis of statements of facts erroneously made by the affiant which struck at the heart of the affidavit's showing of probable cause, the court was required to grant the motion. The judicial system cannot be a party to the use of tainted evidence on the basis that, arguably, the defend-

ant was not entitled to bring to the attention of the court what the court has come to know anyhow. Accordingly, the case as to Davis must be reversed.

### Louis Bethune

Bethune appealed i. f. p. pursuant to 28 U.S.C. § 1915, therefore his court-appointed counsel was entitled to a transcript at public expense. 28 U.S.C. § 753(f). The appointed appellate counsel is a different attorney than the one who defended Bethune at trial.

The transcript originally furnished the appellate counsel did not include opening and closing arguments of counsel. Bethune raised the issue of incompleteness, and this court ordered that the record be supplemented to include opening statements and closing argument of all counsel. The supplement was not furnished until after oral argument (counsel for Bethune having continued to object to the incomplete transcript), and then it contained only the opening statements and closing arguments of the prosecution. It turns out that, under what appears to be a local policy of the Northern District of Alabama, statements and arguments for the defense are not recorded by the court reporter unless requested.

---

*Note*, Testing the Factual Basis for a Search Warrant, 67 Colum.L.Rev. at 1532. On the one hand, there is question whether courts have the time and energy to review in a multitude of cases the magistrate's judgment of the affiant's credibility or his capacity for accuracy. In addition, it must be kept in mind that it is the magistrate, as an independent judicial officer, whose decision will "govern whether liberty or privacy is to be invaded." Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708. "And \* \* \* it is not the after-the-fact procedure on motions to suppress evidence which stands in this scheme as the primary bulwark for the citizen's privacy." United States v. Halsey, *supra*.

On the other hand, one can find support for factual challenge of an affidavit in the policy underlying the exclusionary rule which forbids evidence seized by fed-

eral and state officers in violation of the Fourth Amendment to be used at trial in the federal and state courts. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961). The policy of the rule is not to exclude unreliable evidence, but "to deter—to compel respect for the constitutional guaranty in the only effective available way—by removing the incentive to disregard it." Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677 (1960).

A subsidiary problem is that of whether an attack on the factual validity of the affidavit, if permitted, may contravene the informer's privilege. *See* Note, *supra*, 67 Colum.L.Rev. at 1532. *See also* United States v. Pearce, *supra*. In this case the informer was identified and testified without objection.

Bethune points to several reasons why the lack of defense statements and arguments may have caused him injury. Counsel appointed for him on appeal did not represent him at trial, or otherwise participate in that trial, and, therefore, had no independent knowledge of trial events except as revealed by the transcript. Bethune claims that after seeking, and being denied, a continuance because of illness of his trial counsel, he was represented at trial by an attorney he did not authorize and who was requested by the court to defend him but never appointed to do so; that despite a motion for severance and the request for continuance he was forced to trial with the codefendants, each of whom had separate counsel; that the incomplete transcript reveals conflicting evidence regarding which of the defendants did certain incriminating acts; and that it was shown that Bethune owed money to a codefendant. Therefore, he contends the possibility may not be excluded that the counsel for a codefendant may have said something which prejudicially affected his rights.

Where new counsel is appointed for appeal, he may not be able to discharge his duty to seek out plain errors not brought to the attention of the court unless he can read the entire transcript. Otherwise, the right to assign plain error may become illusory. Hardy v. United States, 375 U.S. 277, 280, 84 S. Ct. 424, 11 L.Ed.2d 331, 334 (1964).[4] And, of course, new appellate counsel may be unable to assign as error or present effectively matters which were objected to, and the objections overruled, except to the extent the transcript informs him of them and supports his presentation of them. We think Hardy required that Bethune's appellate counsel be furnished a complete transcript, in-

cluding statements and arguments of all counsel, prosecution and defense. This circuit followed Hardy in Atilus v. United States, 425 F.2d 816 (5th Cir. 1970) and reversed a conviction where counsel on appeal was not counsel at the trial, and no transcript was available. In United States v. Rosa, 434 F.2d 964 (5th Cir. 1970) we reversed the refusal of the District Court to grant postconviction relief for a conviction in which at the time of petitioner's direct appeal the testimony at trial had never been recorded and, at the time of his collateral petition, the reporter's notes were no longer available. Although it does not appear whether counsel on direct appeal was counsel at trial, Rosa had engaged new counsel to represent his claim on collateral relief. And in United States v. Garcia—Bonifascio, 443 F.2d 914 (5th Cir., 1971), there was new counsel for appeal, and we reversed because, the court reporter having lost his notes, there was no transcript of the government's closing arguments and objections thereto by the defendant, which were overruled.

██ *Hardy* does not rest on constitutional grounds but on the statutory scheme. Within the statutory scheme we do not reach our conclusion by a mechanistic approach to the effect that if a transcript is less than complete and appellate counsel is different from trial counsel a conviction is subject to automatic reversal on appeal or automatic postconviction relief. However, the language of the Court Reporter Act is clear,[5] and its requirements are mandatory and may not be overridden by local practice.[6] Since compliance with the Act is not difficult, and the transcript is of crucial importance to the defendant (and to the appellate court for meaningful review), exceptions should be few and nar-

---

4. *See generally* Boskey, The Right to Counsel in Appellate Proceedings, 45 Minn.L.Rev. 783, 792–793 (1961), where the author points out that counsel appointed on appeal who did not serve as trial counsel "operat[es] under serious handicaps."

5. 28 U.S.C. § 753(b), (1):
   "[the reporter] shall record verbatim by shorthand or mechanical means * * * all proceedings in criminal cases had in open court."

6. Fowler v. United States, 310 F.2d 66 (5th Cir. 1962). This disposes of the

rowly construed. United States v. Workcuff, 137 U.S.App.D.C. 263, 422 F. 2d 700 (1970). It seems to us that the court must be able to say affirmatively that no substantial rights of the appellant were adversely affected by the omissions from the transcript; that is, it must exclude the possibility of any error other than harmless error. We are not able to reach such a conclusion as to Bethune. Accordingly, the case as to him must be reversed.

### Eddie Upshaw

 Upshaw retained an attorney after the indictment was returned in January, 1969, who represented him for several pretrial motions and during the first trial, which took place in June, 1969 and ended in a mistrial. Five days before the scheduled date for the second trial, in November, 1969, Upshaw moved for a continuance on the ground that he wished to change attorneys, and his newly selected attorney had to enter the hospital for a period of approximately 18 days and would be unavailable at trial time. The court denied the motion, and Upshaw went to trial represented by the same attorney who had defended him at the first trial. There was no abuse of the District Court's discretionary power to grant or deny continuance. United States v. Gower, 447 F.2d 187 (5th Cir. 1971).

Other issues raised by Upshaw are wholly without merit.

Affirmed as to Upshaw. Reversed and remanded as to Davis and Bethune.

### ON PETITION FOR REHEARING

#### PER CURIAM:

It is ordered that the petition for rehearing of appellant Eddie Upshaw, filed in the above entitled and numbered cause, be and the same is hereby denied, without prejudice to Upshaw's right to seek

government's contention that, because Bethune's trial counsel failed to request that defense statements and arguments be recorded, the unavailability of a full

correction of a clerical error under Fed. R.Crim.P. Rule 36.

### ON PETITION OF PLAINTIFF-APPELLEE FOR REHEARING

#### BY THE COURT:

The motion of appellee, United States of America, for leave to file petition for rehearing out of time, which petition is directed only to the appeal of Louis Bethune, is hereby granted, and said petition, being filed, is denied.

transcript is attributable to Bethune, and appellate counsel may not complain. The mandate of the Act may not be shifted to counsel.