UNITED STATES of America, Plaintiff-Appellee,

v.

William GARNER, Jr., Keith Jarrett, a/k/a Keith Brown, and Nathaniel Richmond, Defendants-Appellants.

No. 77–5503.

United States Court of Appeals, Fifth Circuit.

Oct. 5, 1978.

---

Y. D. Lott, Jr., Mobile, Ala., (Court-appointed), for Garner.

A. Holmes Whiddon, Mobile, Ala., (Court-appointed), for Jarrett.

H. Diana Hicks, Mobile, Ala., (Court-appointed), for Richmond.

Wm. A. Kimbrough, Jr., U. S. Atty., Ginny S. Granade, Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before COLEMAN, GEE and HILL, Circuit Judges.

COLEMAN, Circuit Judge.

We are here concerned with three appellants, jointly indicted, tried and convicted. The grounds asserted for reversal, however, vary from appellant to appellant; therefore, we discuss them individually.

On February 17, 1977, appellants, along with three other persons, were indicted by the United States Grand Jury for the Southern District of Alabama. Count One charged William Garner, Jr., and Jessee Garner, his wife, with distributing and possessing with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). Count Two charged William Garner, Jr., Nathaniel Richmond, and Keith Jarrett, as well as Jessee Garner, Roderick Foster, and Marvin Pettway, with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. Foster and Pettway subsequently pleaded guilty. Jessee Garner was acquitted on both counts. This left only Garner, Jarrett, and Richmond for appellate consideration.

Trial was scheduled to begin on July 18, 1977, but was continued until July 22, because Richmond failed to appear. Trial began on July 22 and concluded on August 2. The jury returned verdicts of guilty against all three appellants. Garner was found guilty as charged in Counts One and Two; Richmond and Jarrett were found guilty on Count Two.

Garner was sentenced to ten years under Count One and to ten years under Count Two, to run concurrently, with special parole terms of three years each under both counts, also to run concurrently. Richmond and Jarrett were each sentenced five years with special parole terms of three years.

We affirm as to Garner and Jarrett but reverse and remand for a new trial as to Richmond.

*William Garner, Jr.*

Garner contends that his conviction under 21 U.S.C. §§ 841(a)(1) and 846 should be reversed because the court erred in denying his motion to suppress evidence obtained by a search warrant which he says was illegal. He claims that the affidavit supporting the search warrant could not support a finding of probable cause because it contained hear-

say supplied by two confidential informants and the informants' credibility was not adequately demonstrated. We find that the affidavit presented sufficient information to justify a finding of probable cause, and we affirm Garner's conviction.

The use of hearsay alone does not make the affidavit for a search warrant insufficient, and it is not necessary that the magistrate require that the informants be produced or that the affiant's statements be based on personal observations so long as there is substantial basis for crediting the hearsay. *Jones v. United States,* 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

In *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Court explained what would be considered a "substantial basis for crediting the hearsay" by saying that the affidavit must indicate circumstances from which the informer concluded that evidence was present or that a crime had been committed, and the affidavit must present the information upon which the affiant concluded that the unidentified informant was reliable.

The affidavit in the present case satisfies both parts of this test. Paragraphs four through nine indicate that the informants knew appellant personally, that in the recent past they had seen him with large quantities of heroin on several occasions, and that both had said just prior to the search that they had seen appellant in Mobile and had been told by him that he was expecting a shipment of heroin. One informant said appellant told him that the heroin had been received and gave him the location for its processing. All of this information adequately provides a basis from which the informants could conclude that appellant was participating in illegal drug traffic and that the heroin was where he claimed it was.

We have said that all that is required to meet the *Spinelli* and *Aguilar* standard is "a sufficient statement of how the informer gathered his information", *United States v. Mendoza,* 5 Cir., 1970, 433 F.2d 891, 894. These indications of how the information was gathered, based on personal observa-

tions and statements of appellant to the informants are, therefore, in and of themselves sufficient to meet the first prong of the *Aguilar* test. It should be noted, additionally, that the informants' information is supported by the other information contained in the affidavit which was gathered from the Mobile Police and Drug Enforcement Agency investigators, *United States v. Tucker,* 5 Cir., 1976, 526 F.2d 279, 281.

The affidavit in this case also indicates the underlying circumstances which caused the officer to conclude that the informers were reliable. In *United States v. Hall,* 5 Cir., 1977, 545 F.2d 1008, we pointed out, "[o]ur cases interpreting and applying *Aguilar* make clear that a factual basis for credibility of an informant can be supplied by an 'explicit claim of past reliability'", *United States v. Tucker, supra,* at 281. See also *United States v. Mendoza,* 5 Cir., 1970, 433 F.2d 891, 894, 895, *cert. denied,* 401 U.S. 943, 91 S.Ct. 953, 28 L.Ed.2d 225 (1971); *United States v. Vigo,* 5 Cir., 1969, 413 F.2d 691, 692. The statements as to the reliability of the informants in the instant case not only meet this standard, they exceed it. They show that the affiant, a Drug Enforcement Agent, had knowledge of the informants' credibility and reliability on prior occasions and that information supplied by the informants in the past both to the Drug Enforcement Agent and the Mobile Police Department had proven to be accurate.

Having met both parts of the *Aguilar* test, the affidavit is found to have shown probable cause to support a legal search warrant.

Garner's conviction must be affirmed.

### Keith Jarrett

In attempting to justify reversal of his conviction under 21 U.S.C. § 846, Jarrett asserts that his motion to acquit should have been granted because the testimony of the government witnesses against him was "incredible as a matter of law". He so characterizes the testimony because the three main government witnesses were ad-

mitted drug users who were testifying pursuant to plea bargain agreements, and because, after hearing their testimony, the jury acquitted Jessee Garner on both counts. Neither of these contentions has merit and we affirm Jarrett's conviction.

■ The standard for review on this issue is whether, " 'viewing the evidence presented most favorably to the Government, a reasonably-minded jury could accept the relevant and admissible evidence as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt' ", *United States v. Kohlmann,* 5 Cir., 1974, 491 F.2d 1250, 1253. *See also, Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). This Court has repeatedly held that "we will not disturb [the jury's] verdict in light of the substantial evidence supporting it. It is not for this Court to weigh the credibility of witnesses", *United States v. Vomero,* 5 Cir., 1978, 567 F.2d 1315, 1316; *United States v. Cravero,* 5 Cir., 1976, 530 F.2d 666, 670; *United States v. Mills,* 5 Cir., 1968, 399 F.2d 944, 948.

■ The first theory which appellant advances in support of his claim that the testimony given by witnesses Leonard Greenhouse, Marvin Pettway, and Wesley Pettway was incredible as a matter of law is that their testimony was incompetent because they were drug addicts at the time of the conspiracy and because they were addicts, turned informer. *Hansford v. United States,* 1966, 124 U.S.App.D.C. 387, 365 F.2d 920, cited in support of this contention is not on point. In that case the competency of the *defendant,* not a witness, was questioned. The defendant admitted that he had been using narcotics throughout the trial. The court held that the trial judge should have held a hearing as to the competency of the defendant to stand trial. In the case at bar, the government witnesses admitted that they had formerly used

heroin, but explained that they had undergone methadone treatment and were no longer using heroin. The jury could take this information into account in weighing the witnesses' credibility.[1]

In a recent decision, this Court reiterated our holding that "[t]he fact that a witness is a narcotics user goes not to his competency, but to his credibility", *United States v. Jackson,* 5 Cir., 1978, 576 F.2d 46, 48. *See also United States v. Killian,* 5 Cir., 1975, 524 F.2d 1268, *cert. denied,* 425 U.S. 935, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976); *Gurleski v. United States,* 5 Cir., 1968, 405 F.2d 253, 267, *cert. denied,* 395 U.S. 977, 89 S.Ct. 2127, 23 L.Ed.2d 765 (1969); Rule 601, Fed.R. Evid.

In *United States v. Cravero,* 5 Cir., 1976, 530 F.2d 666, 670, we said, "One of the oldest established rules of Anglo-American jurisprudence is that the jury is the arbiter of credibility of witnesses". We also pointed out that for the testimony to be considered incredible, "it must be unbelievable on its face", i. e., testimony as to "facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature", 530 F.2d at 670.

The witnesses in this case each gave substantial testimony concerning events which took place during the conspiracy. Their statements did not conflict as to Jarrett in that each related that he knew of specific instances when Jarrett had brought heroin from Detroit to Mobile for Garner to be sold by members of the Greenhouse/Pettway organization. The inability of the witnesses to recall exact dates of these transactions is understandable in that the testimony involved some thirty to forty trips between Detroit and Mobile which occurred over a period of a year. Their testimony was further corroborated by a July 17, 1976,

1. Appellant also cites *United States v. Butler,* 1973, 156 U.S.App.D.C. 356, 481 F.2d 531, for the proposition that an addict who turns prosecution witness has a powerful motive to fabricate a case for his own benefit. Appellant fails to note that although the court *did* recognize this proposition, it held that the witness's own testimony as to narcotics use put the jury on notice that uncorroborated testimony of the witness should be weighed cautiously, 156 U.S. App.D.C. at 360, 481 F.2d at 535.

airline ticket from Detroit to Mobile bearing the defendant's alias.[2]

Jarrett further asserts that the three witnesses' testimony was incredible as a matter of law because the jury believed their testimony as to Jarrett but disbelieved it as to co-defendant Jessee Garner. In support of this contention, appellant cites *Sylvia v. United States,* 1 Cir., 1963, 312 F.2d 145, and *Brooke v. United States,* 1967, 128 U.S. App.D.C. 19, 385 F.2d 279, two cases involving the question of whether the jury should have been instructed on the defense of entrapment. Neither case speaks directly to Jarrett's situation. In *Sylvia,* the court said that the witness's testimony as to a "single, indivisible episode" should be accepted or rejected in its entirety, 312 F.2d at 147. In the case at bar the witnesses were testifying to numerous, divisible episodes which together constituted a conspiracy. None of the witnesses indicated that Jarrett and Jessee Garner ever transported heroin at the same time or on the same flight; their actions were separate occurrences.

In *Brooke,* the court held that the only way a defense of entrapment could have been found would have been for the jury to pick and choose evidence from both sides, which the court found unacceptable in this case because the selective process would have been "so attenuated as to strain credulity to the breaking point", 128 U.S.App. D.C. at 23, 385 F.2d at 283. In the present case it was not necessary for the jury to "strain credulity" at all in order to find Jarrett guilty while finding Jessee Garner innocent. There was less testimony and evidence tending to connect Mrs. Garner to the conspiracy than there was for any of the other defendants.

■ "The legal sufficiency of the evidence to support each verdict must be determined without reference to the other", *Bryson v. United States,* 9 Cir., 1956, 238 F.2d 657. As this Court held in *United*

States v. Kohlmann, supra, at 1253, "even if we assume that the jury's verdict is inconsistent or is the result of a compromise, this is not cause for speculation or inquiry into the verdict on our part". *See also, United States v. Smith,* 5 Cir., 1975, 523 F.2d 771, 782, *cert. denied,* 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976).

■ The evidence against Jarrett was sufficient to convict.

### *Nathaniel Richmond*

The Sixth Amendment to the Constitution requires that in all criminal prosecutions the defendant shall enjoy the right to have compulsory process for obtaining witnesses in his favor. Nathaniel Richmond contends that the District Court denied him this valuable right in the trial of this case.

A synopsis of what happened is essential to the correct evaluation of Richmond's claim, and we find that his contentions have merit.

The indictment against Richmond and his alleged co-conspirators was returned February 17, 1977. Richmond lived in Detroit, where he was arrested on April 19. On June 3 Richmond appeared in Mobile, counsel was appointed, he was arraigned, and he entered his plea of *not guilty.* The case was set for trial on July 18. On that day, however, Richmond failed to appear; a warrant was issued for his arrest. He turned himself in to federal officers in Detroit, claiming that his failure to appear was due to illness and lack of money to travel to Mobile. He was either sent or brought to Mobile and trial began on July 22.

The previous day, counsel for Richmond filed a written application for subpoenas for four witnesses who lived in Detroit. They were Sarah Jones, Mary Ray, Birdolia Jones, and a Mr. Simmons, of the Simmons

---

2. Note, however, that we have held that "the uncorroborated testimony of an accomplice is sufficient to support a conviction in the federal courts if it is not on its face incredible or otherwise unsubstantial", *United States v. Iacovetti,* 5 Cir., 1972, 466 F.2d 1147, 1153. *See*

*also, United States v. Prentiss,* 5 Cir., 1971, 446 F.2d 923; *United States v. Bays,* 5 Cir., 1971, 448 F.2d 977; *United States v. Stanley,* 5 Cir., 1970, 433 F.2d 637; *Tillery v. United States,* 5 Cir., 1969, 411 F.2d 644.

Construction Company, by whom Richmond had previously been employed. On July 22, prior to the beginning of the trial and in accordance with Rule 17(b) F.R.Crim.P., the Court allowed appellant's counsel to make an *ex parte* showing as to what the testimony of the requested witnesses from Detroit would be. *Unfortunately, this hearing was not stenographically reported.* The Court did grant permission to subpoena Mary Ray and granted "back-up" subpoenas for Birdolia Jones and Sarah Jones in the event Mary Ray was unable to appear. The record shows that Birdolia Jones claimed to have had a miscarriage about two weeks previously and was unable to travel to Mobile. In any event, Mary Ray appeared and testified. The Court declined to issue a subpoena for Mr. Simmons because an inquiry, the exact nature and extent of which is not of record, indicated that Simmons had not ascertained what his payroll records showed about Richmond being at work on the specific dates when the government alleged that Richmond had made airplane flights to or from Mobile in the furtherance of the alleged conspiracy. The *written application* for the subpoenas did not indicate the nature of the testimony expected from any of the witnesses nor why their presence was necessary for an adequate defense; the District Court did not state into the record the reasons for denying the subpoenas for the three Detroit witnesses.

After the appellate record had been filed and we were about to hear oral argument, counsel for Richmond sought to cure the above described deficiency by making a motion before the District Judge for settlement and approval pursuant to Rule 10(c),[3] Federal Rules of Appellate Procedure. In this motion, based on counsel's recollection and on notes from telephone interviews with the desired Detroit witnesses, counsel asserted that during the *ex parte* proceedings the following was made known to the Court:

Birdolia Jones was expected to testify that she attended a neighborhood barbecue in Detroit on July 4, 1976, that began around noon and lasted throughout the afternoon and into the early evening at the home of Rosalee White and Eleanore White, and Richmond was at the barbecue the entire time;

Sarah Jones was expected to testify that she was Richmond's girl friend and had been such since the Spring of 1976 [when his wife left him and returned to Mobile], that Richmond worked for Simmons Construction Company in Detroit on a daily basis except when work was irregular, that she was with Richmond all day July 4, 1976, attending the barbecue, which was not over until after dark *and Richmond did not travel to or from Mobile in July, 1976*;

Simmons was expected to testify that Richmond worked for the Simmons Construction Company in Detroit and that the company's timesheet and payroll records showed whether Richmond was at work on

---

**3.** F.R.A.P. 10(e)—Correction or Modification of the Record. If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

Cf. F.R.A.P. 10(c)—Statement of the Evidence or Proceedings When no Report Was Made or When the Transcript is Unavailable. If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.

These two parts of Rule 10 are often used interchangeably where appropriate.

May 7, May 25, July 26, and July 27, 1976, occasions when, according to the government's proof, he was in Mobile in furtherance of the alleged conspiracy.

On the motion to settle the District Judge declined to approve counsel's Statement of Proceedings because he had no clear, independent recollection of what had transpired at the unrecorded *ex parte* hearing.

In any event, Mary Ray did appear and did testify before the jury that Richmond was in Detroit and did attend the barbecue on July 4, exactly as allegedly the two Jones' witnesses would have testified.

The expected testimony of Birdolia Jones (if she had been physically able to attend) was merely cumulative of what Mary Ray took the stand and swore to in person, which was that Richmond was in Detroit until after dark on July 4, a story which the jury apparently chose not to credit.

In the present state of the record, however, it cannot confidently be said that the testimony of Sarah Jones and Simmons would have fit within the cumulative classification. As alleged by appellant, Sarah Jones was expected to testify that Richmond was present in Detroit for the *entire month* of July and could not possibly have used any of the other airline tickets attributed to him. Moreover, Mr. Simmons was to corroborate the testimony of Sarah Jones by testifying that Richmond was at work on at least two of the days when he supposedly used the airline tickets.

■ The Court Reporters Act, 28 U.S.C.A. § 753, provides that the court reporter shall record verbatim "all proceedings in criminal cases had in open court." 28 U.S.C.A. § 753(b)(1). The requirements of the Act are mandatory and it is the duty of the court, *not the attorney*, to see that its provisions are complied with. *United States v. Brumley*, 5 Cir. 1977, 560 F.2d 1268, 1280; *United States v. Upshaw*, 5 Cir. 1971, 448 F.2d 1218, 1223 & n. 6, *cert. denied*, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972);

*Fowler v. United States*, 5 Cir. 1962, 310 F.2d 66, 67. As the legislative history makes clear, the Act "was enacted for the protection of the parties and of the court and to the end that justice may be served by having available an adequate record, and particularly so in a criminal proceeding." *Edwards v. United States*, 10 Cir. 1966, 374 F.2d 24, 26 n. 2, *cert. denied*, 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed.2d 120 (1967). Thus, we find no fault with appellant or his attorney for failing to "make a record".[4] Rather than penalizing a defendant for his attorney's failure to see that the court reporter is performing his duties, this Court has, on several occasions, vindicated the defendant's statutory right to a complete and accurate transcript by awarding him a new trial in cases where an error was alleged to have been committed in an omitted portion of the record and the record was insufficient to pass on the merits of the specified error. *See United States v. Upshaw, supra; Fowler v. United States, supra; Stephens v. United States*, 5 Cir. 1961, 289 F.2d 308.

When compared to the government's use of the subpoena power, Richmond's request appears reasonable. The government subpoenaed thirty witnesses, nine from out-of-state. It used twenty-three, six from out-of-state.

■ After all, in view of the Constitutional mandate, we should not recoil from the request of an impecunious defendant for a few out-of-state witnesses in cases such as the present one, where, through the vast resources of the federal government, the prosecution is able to present an array of witnesses. The right of an accused to subpoena witnesses in his behalf and present his version of the facts to a jury is unambiguously guaranteed by the Sixth Amendment and, moreover, is a fundamental component of due process itself. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

---

4. This is not to disparage the careful trial attorney who sees that all court officials are at their appointed stations at the commencement of proceedings. Such a practice is both commendable and advisable.

In view of the foregoing, we remand Richmond's case for a determination of the substance of the allegedly expected testimony, with directions to grant a new trial should, after a hearing, the District Court finds the testimony of the back-up witnesses to be relevant to Richmond's alibi and "necessary to an adequate defense". Fed.R.Crim.P. 17(b).

We point out that the discretion typically afforded the judge in this area is governed by the following principle:

'If the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous.'
.   .   .   That test places the burden of showing frivolity or abuse of process on the Government, where it properly belongs.

*Welsh v. United States*, 5 Cir. 1968, 404 F.2d 414, 417–18 (citations omitted).

It will be noted that here the averments are relevant to an alibi defense, thus not frivolous, and they are not incredible on their face.  The only question is whether, as a matter of fact, Sarah Jones will testify that she knows that Richmond did not leave Detroit during the July in question and whether the Simmons payroll records support the alibi as to any date in issue.  If neither witness will so testify, that is the end of the matter.  The Court can so certify to this Court, along with a transcript of the hearing, and this conviction will then stand affirmed.

If, however, a hearing demonstrates that these witnesses will testify as heretofore alleged the District Judge will grant a new trial.

Richmond's attacks on the denial of a continuance and the number of peremptory challenges allowed him as a co-defendant are altogether without merit.

The judgments of the District Court as to William Garner, Jr. and Keith Jarrett are AFFIRMED.

The conviction of Nathaniel Richmond is reversed and remanded, with directions.