## WOOLARD v. DISTRICT OF COLUMBIA.

### No. 713.

Municipal Court of Appeals for the
District of Columbia.

Dec. 10, 1948.

John T. Bonner, of Washington, D. C.,
for appellant.

Edward A. Beard, Asst. Corp. Counsel,
of Washington, D. C., (Vernon E. West,
Corp. Counsel, and Chester H. Gray, Prin-
cipal Asst. Corp. Counsel, both of Washing-
ton, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Appellant was convicted on a charge of
operating a motor vehicle while under the
influence of intoxicating liquor. Code 1940,
Supp. VI, 40—609.

The first charge of error he makes is that
the police officer who arrested him and
three other officers who observed him when
he was brought into the police precinct
were permitted to testify that in their opin-
ion defendant was at the time under the
influence of intoxicating liquor. The ar-
resting officer first testified that he saw de-
fendant swerve his car in the road and that
when he overtook and arrested him defend-
ant had a moderate odor of alcohol on his
breath, was unsteady on his feet, uncertain
and halting of speech, had a blank stare
in his eyes and talked in a thick manner.
The three other officers gave almost iden-
tical testimony and all four officers were
permitted over defendant's objection to tes-
tify that in their opinion defendant was
under the influence of intoxicating liquor.

We think this evidence was prop-
erly admitted. We do not overlook the
general rule that an expert may not testify
to his conclusions regarding facts from
which the jury are capable of drawing
their own conclusions.[1] But we think this
case is governed by the more applicable
rule that even though one is not an expert
he may give his opinion based on personal
observations as to whether a person is in-

[1] Henkel v. Varner, 78 U.S.App.D.C.
197, 138 F.2d 934; Kenney v. Washington
Properties, 76 U.S.App.D.C. 43, 128 F.
2d 612, 146 A.L.R. 1; King v. Davis, 54
App.D.C. 239, 296 F. 986.

toxicated.[2] Similarly it has been held that even a layman may give testimony, based upon evidence he has personally observed, as to whether a person is sane or otherwise.[3] Thus the Supreme Court has said that a lay witness may not only relate "the significant instances of speech and conduct" of a person whose sanity is under inquiry, but may also testify to the opinion of the witness as to the mental capacity formed at the time from such observation.[4] In so deciding the Court said: "In no other way than this can the full knowledge of an unprofessional witness with regard to the issue be placed before the jury, because ordinarily it is impossible for such a witness to give an adequate description of all the appearances which to him have indicated sanity or insanity." It seems clear that the same reasoning applies to the evidence in the present case.

Appellant next says that the trial court erred "in permitting testimony to the effect that an urinalysis had been made on the defendant, but refused to instruct the jury regarding inferences they might make as to the evidence controlled by, but not produced by the Government."

The record shows the following testimony concerning this urinalysis: One of the police officers said that when he talked to the defendant soon after his arrest he asked him to furnish a sample of urine so that it could be tested for alcoholic content. He related that defendant thereupon furnished a sample which the witness turned over to Mr. Yongue, a chemist employed by the District of Columbia Government. Mr. Yongue testified that in line with his official duties he was given a bottle containing what purported to be a sample of urine taken

from the defendant. At this point counsel for defendant objected to any further testimony or reference to the urinalysis or the fact that urinalysis was made until such time as the specimen could be produced and properly identified. The objection was overruled and the witness was permitted to testify that he had made a test of the alleged sample for alcoholic content, that he had produced the sample "at the other trial of the defendant,[5] at which time I gave the sample to the Corporation Counsel." Mr. Yongue further testified that he had not seen the specimen since the date of the previous trial and that he did not know where it now was. At this point the Assistant Corporation Counsel stated to the court that his office did not have the sample referred to and did not know where it was, and that it must have been lost. Mr. Yongue did not testify concerning the result of the test he had made and no expert testimony was tendered then or later as to the alcoholic content of the specimen.

Appellant testified in his own defense that he had not been intoxicated at the time of his arrest. At the conclusion of the case the defense requested the court to instruct the jury that if either party to the action had within his control evidence bearing upon the issue involved and had failed to produce that evidence or satisfactorily explain such failure, that the jury might infer that such evidence would be unfavorable to the party who had it within his possession. This instruction was refused, but the court instructed the jury that they were to make no inference regarding the urinalysis test.

█ It is true that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the

---

[2] People v. Moore, 70 Cal.App.2d 158, 160 P.2d 857; State v. Rand, 166 Or. 396, 111 P.2d 82, 112 P.2d 1034; State v. Schnell, 107 Mont. 579, 88 P.2d 19, 121 A.L.R. 1082; Bauer v. People, 103 Colo. 449, 86 P.2d 1088; State v. Townsend, 146 Kan. 982, 73 P.2d 1124; State v. Hedding, 114 Vt. 212, 42 A.2d 438; Grier v. State, 72 Ga.App. 633, 34 S.E.2d 642; Lawler v. State, 144 Tex.Cr.R. 558, 164 S.W.2d 850; State v. Revard, 341 Mo. 170, 106 S.W.2d 906; State v. Dale, 66 S.D. 418, 284 N.W. 770.

[3] Turner v. American Security & Trust

Co., 213 U.S. 257, 29 S.Ct. 420, 53 L. Ed. 788; Obold v. Obold, 82 U.S.App.D. C. 268, 163 F.2d 32; Life Ins. Co. of Virginia v. Herrmann, D.C.Mun.App., 35 A.2d 828.

[4] Turner v. American Security & Trust Co., supra [213 U.S. 257, 29 S.Ct. 421], note 3.

[5] Defendant had been convicted at an earlier trial, but had been awarded a new trial. There is nothing in the record to show that the jury knew about the outcome of the first trial.

transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."[6] But failure to produce such evidence can always be explained.[7] It seems clear that such was the purpose of the Government when it showed that the specimen had been lost. It also seems clear that it was not an attempt to prejudice the defendant by showing that there had been a urinalysis, for no mention of the result of the test was permitted or even offered.

■ We think the trial judge handled the situation correctly, and properly protected the rights of the defendant, by withdrawing from the jury all consideration of the urinalysis test. Such was the reasonable effect of telling them "that they were to make no inference regarding the urinalysis test." It was uncontradicted that the specimen itself was lost or could not be produced. As we have seen, the purpose of the Government in offering Mr. Yongue as a witness was to account for the absence of the specimen. Hence it was proper to protect the defendant, as the trial judge did, by telling the jury in effect that they were to ignore the fact that such a test had ever been made.

We cannot accept appellant's contention that he was entitled as a matter of law to have the jury infer that the Government had evidence at its disposal which it was withholding.

"The *inference* (supposing the failure of evidence not to be explained away) is of course that the tenor of the specific unproduced evidence would be *contrary to the party's case,* or at least would not support it. In other words, the inference does not affect indefinitely the merits of the whole cause, as it does when fraudulent conduct is involved, but affects specifically and only the evidence in question." (Author's italics.) 2 Wigmore, Evidence, 3rd Ed., § 290. Here the only "evidence in question" was a specimen of urine. Its alcoholic content

was not testified to by any one at the trial. It was only mentioned by the prosecution to account for its loss or non-availability. In this there was no prejudice to defendant and no error.

Affirmed.

---

6 Graves v. United States, 150 U.S. 118, 14 S.Ct. 40, 41, 37 L.Ed. 1021; Milton v. United States, 71 App.D.C. 394, 110 F.2d 556; Evans v. Bell, 49 App.D.C. 238, 263 F. 634; Krupsaw v. W. T. Cowan, Inc., D.C.Mun.App., 61 A.2d 624.

7 Bernhardt v. City & S. R. Co., 49 App.D.C. 265, 263 F. 1009; Shasta S. S. Co. v. Great Lakes Towing Co., D.C.W. D.N.Y., 44 F.Supp. 572; In re Trustees System Co. of Louisville, D.C.W.D.Ky., 30 F.Supp. 361; 2 Wigmore, Evidence, § 290 (3rd ed.).