Zack WILLIAMS, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 1892, 1893.

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 11, 1957.

Decided April 4, 1957.

Rehearing Denied April 17, 1957.

James J. Laughlin, Washington, D. C., for appellant.

Hubert B. Pair, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was convicted by the court, sitting without a jury, of operating an automobile while under the influence of intoxicating liquor [1] and driving through a safety zone. The chief errors alleged on this appeal are: (1) that there was insufficient evidence to support the conviction, and (2) that the trial court's decision was contrary to certain supposedly uncontradicted medical testimony.

It was conceded that appellant was operating the automobile. A police officer testified that on March 13, 1956, at about 8:45 P.M., he observed the automobile traveling south on 14th Street; that it was weaving about the roadway on the right-hand side nearest the curb; and that at 14th and Q Streets it suddenly swerved to the left, crossed over a safety island, and headed in an easterly direction on Q Street. The officer stopped the car and noticed a strong odor of alcohol coming from it. He asked appellant what was wrong and received the reply, "What's going on?" Appellant then stepped out of the car and "staggered back;" he appeared confused; his eyes were watery; there was "a strong odor of alcohol on his breath at that time," and he had to be assisted to the scout car. There was a woman passenger with him who had been drinking but was not intoxicated, and an empty liquor bottle was found in the automobile.

At the precinct station, appellant unsuccessfully attempted to give a specimen for urinalysis. When asked why he was driving the car, "he said he thought he could make it home O.K." Further questioning disclosed that "he had had about a half-pint of whiskey and he had finished drinking about 2:30 A.M. on the morning of the 13th." He also said that he would occasionally "black out," and that he was under treatment by a physician for this condition. The testimony of the arresting officer was corroborated by another officer assigned to the patrol wagon, who stated that in his opinion appellant was in an intoxicated condition and that he smelled liquor on his breath.

Appellant testified and denied that he was intoxicated or that he had been drinking. He defended his actions on the ground that he was suffering from a disorder which created momentary "blackouts," and that at the time in question he had simply "blacked out." He testified that on the night of his arrest he was returning home from a church club meeting where beer was served and that he had agreed to transport four of the women members of the club to their homes. They stopped at a restaurant in southwest Washington for seafood and then drove to the northwest section where three of his passengers lived. He was taking the fourth home when stopped by the officer. He said that just before arriving at Q Street, "it * * * looked like lots of little people and things jumped in front of me * * *." He recalled intending to make a left turn at 14th and Q Streets but turned right. His passenger reminded him that it was a one-way street. He stopped the car and remembered the officer telling him, "It seems like you have been drinking." He recalled being helped to the scout car and being placed in the patrol wagon.

A practicing physician testified for appellant as an expert in the field of neuropsychiatry and also as a character witness. He stated that in February 1956 he examined appellant professionally, found he complained of momentary blackouts, and advised him to abstain from alcoholic beverages. In response to a hypothetical question, the doctor expressed the opinion that, on the basis of the facts given him, appellant's behavior was caused by a blackout and not intoxication. No rebutting medical testimony was offered by the government,

[1]. Code 1951, § 40-609(b) (Supp. V).

but nevertheless the court found appellant guilty. This appeal followed.

■ Appellant first contends that there was insufficient evidence to support the conviction. We think, however, that the prosecution introduced ample evidence to prove guilt beyond a reasonable doubt.[2]

■ Appellant's main argument is that the government offered no evidence to contradict the medical testimony presented by him and hence the court did not give the proper weight to this evidence. It is true that as a general rule if the testimony is all one way, and is not immaterial, irrelevant, inconsistent or contradicted, neither the judge nor the jury is at liberty to disregard such evidence, and a court of review would have to set aside a contrary finding. Such is not the case here. The government introduced evidence of intoxication; the defense was that appellant's actions were due to some other agency and evidence to substantiate this claim was presented. Thus a real issue of fact was created which was for the trier of the facts to resolve.[3] Admittedly there was no *medical* testimony to controvert appellant's evidence, but there was ample lay testimony to the effect that he was intoxicated, and it is settled that such testimony is competent to prove intoxication.[4] The court, sitting as both judge and jury, could give the opinion of the expert such force or weight as it thought deserving, but there is no rule or law that compels the trier of the facts to give a controlling weight to such opinions or to sur-

render his own judgment when a true issue of fact is presented.[5] Nothing in Stone v. Stone, 1943, 78 U.S.App.D.C. 5, 136 F.2d 761, cited by appellant, requires a different conclusion.[6]

We have considered the other assignment of error and find it without merit.

Affirmed.

2. Price v. District of Columbia, D.C.Mun. App.1947, 54 A.2d 142, 144.

3. Illustrative cases in which similar defenses were held to create only fact issues are: City of Clovis v. Kinsolving, 1956, 61 N.M. 83, 294 P.2d 1105 (actions allegedly caused by a prior head injury); Taylor v. State, 1951, 94 Okl.Cr. 368, 236 P.2d 270 (defendant allegedly affected by medicine); Lamkin v. State, 1939, 136 Tex.Cr.R. 99, 123 S.W.2d 662 (defendant allegedly affected by medicine).

4. Woolard v. District of Columbia, D.C. Mun.App.1948, 62 A.2d 640; see also, the interesting case of State v. Pichadou, 1955, 34 N.J.Super. 177, 111 A.2d 908.

5. Obold v. Obold, 1947, 82 U.S.App.D.C. 268, 163 F.2d 32; Hollywood Credit Clothing Co. v. Brooks, D.C.Mun.App. 1956, 124 A.2d 857.

6. That case involved an uncontested suit for annulment in which there was no evidence, lay or medical, to contradict appellant's claim.