**UNITED STATES of America**

**v.**

**Dennis T. BUTLER, Appellant.**

**No. 72-1213.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 26, 1973.

Decided June 27, 1973.

---

**532**

Julian H. Singman, Washington, D. C. (appointed by this Court), for appellant.

Peter C. Schaumber, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, and Warren L. Miller, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, MacKINNON, Circuit Judge, and VAN PELT,* Senior United States District Judge for the District of Nebraska.

BAZELON, Chief Judge:

Appellant was convicted of first degree felony murder, first degree premeditated murder,[1] and robbery.[2] He was committed for observation pursuant to 18 U.S.C. § 5010(e), the Youth Correc-

tions Act. The resultant 5010(e) report recommended adult sentencing. On the basis of this report and for stated additional reasons, the trial judge sentenced appellant as an adult to terms of 20 years to life on the murder charges and 5-15 years on the robbery count. The following questions are presented on this appeal: whether the trial judge erred in not ordering two key prosecution witnesses to undergo physical and psychiatric examinations; whether the court erred in admitting the testimony of a police officer as to whether those witnesses were under the influence of narcotics when they made statements to the police; and, whether appellant was properly denied sentencing under the Youth Corrections Act.

**I**

On September 30, 1970, James Hill and Gail Robinson told the police homicide squad the following story. Hill said that at about 3 p.m. the previous day he had telephoned appellant. During their conversation, appellant confessed that he had just killed someone. Appellant said the victim was an old man who had seen him selling narcotics to some young boys, seized the drugs and destroyed them. Appellant admitted striking the man, tying him up, putting a stocking in his mouth, choking him with a leather belt then, when the belt broke, finishing the garroting with a telephone cord. To make sure the old man was dead, appellant said he poured water down his victim's throat. Appellant claimed to have then taken a set of keys from the deceased. Later that same day, September 29, appellant repeated this narrative to both Hill and Robinson at Hill's apartment. Ms. Robinson, at first, did not tell the police of appellant's confession, allegedly because she was afraid of him; but, when informed that Hill had made a complete statement, she did the same.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 22 D.C.Code 2401.

2. 22 D.C.Code 2901.

The evidence found at the scene corroborated Hill's and Robinson's stories. The victim was found bound and gagged, with a wet sock stuffed in his mouth; a Pepsi bottle half-full of water lay near the body. The decedent had been strangled with a telephone cord and a broken belt was found nearby.

In addition, the pants worn by appellant on the day of the crime showed traces of paint which matched the paint found on the victim's jacket and on the bottle found near the body. An FBI agent testified that hair fibers matching appellant's were found on the pants, coat and shirt of the deceased. There was also testimony putting both appellant and his victim at the scene of the crime at the approximate time of its occurrence. Although the deceased was seen carrying his keys on the day of his murder, no keys were found on the body. About two weeks later, the victim's keys were thrown from the rooftop of a house on the block where appellant lived.

A new fact was interjected into this story at trial. Hill testified that he was, himself, a heroin addict; that he called appellant on the day of the crime to get narcotics; that when appellant arrived at his apartment later in the day, Hill injected heroin. Hill testified as to the extent of his use and said he had previously purchased drugs from appellant. He claimed, however, to have stopped using heroin since the crime, gone into methadone treatment, and then gotten methadone on the street. Ms. Robinson also admitted to using narcotics (although not to being addicted) and, specifically, to "snorting" heroin at Hill's apartment on the day of the crime.

A police officer testified that he was familiar with the physical manifestations of narcotics usage; and that, from his observation of Hill and Robinson on the day they gave statements to the police, neither was then under the influence of drugs.

## II

Before trial, appellant's attorney filed a motion for physical and mental examinations of Hill and Robinson. That motion was denied because appellant had adduced no supporting evidence to indicate that the witnesses were addicts. The judge did, however, observe that:

> If, at trial, it appears to the Court that any witness may be incompetent, resources are available to the Court to make that determination. · United States v. Butler, 325 F.Supp. 886, 887 (D.D.C.1971).

Appellant asserts that when, at trial, it became clear that the witnesses were addicts, the court should have exercised its power to order examinations, *sua sponte* for the purposes of determining competency or of aiding the jury in weighing credibility. The decision whether to do so involves a difficult balancing of the respective needs and dangers presented by the individual case; hence it is a judgment committed to the sound discretion of the trial judge.[3]

Appellant relies on United States v. Crosby, 149 U.S.App.D.C. 306, 462 F.2d 1201 (1972) and United States v. Kinnard & Payne, 150 U.S.App.D.C. 386, 465 F.2d 566 (1972) to show that there was an abuse of discretion here. *Crosby* merely held that the trial court had erred in not looking at a key government witness' hospital records before finding him competent to testify. The witness was a long-time addict, had been hospitalized for that reason, and had used drugs on the day of the trial. *Crosby* is distinguishable on its facts but, more importantly, it did not present the difficult issue of a court ordered medical examination of a witness.

The court in *Kinnard* was concerned with the uncorroborated testimony of "narcotics addicts who are paid informers of the Government with criminal charges pending against them." 465 F. 2d at 572. While *Kinnard* is instructive

3. United States v. Benn & Hunt, 155 U.S.App.D.C. 180, 476 F.2d 1127 (1972).

in regard to the reliability of addict-witnesses generally, it is clearly not controlling of the case before us. *Kinnard* did not hold that any addict-informer must be subjected to a court ordered physical and mental examination. We found error in the trial judge's refusal to permit the defense to prove the *"fact of [the informer's] addiction"* and to give a cautionary instruction. Our reference to a physical examination came only in a suggestion that appointing an expert to examine the informer's arms for needle marks would be one means of providing evidence of addiction. 465 F.2d at 574–575. The examinations sought by appellant are far more drastic intrusions on the witnesses' privacy than the cautionary instruction and "examination" discussed in *Kinnard*.

The question of when a trial judge should order a physical and psychiatric examination of a prosecution witness was directly considered by this court in United States v. Benn & Hunt, 155 U.S. App.D.C. 180, 476 F.2d 1127 (1972). We there explained that such an examination "may seriously impinge on a witness' right to privacy; * * * the examination itself could serve as a tool of harassment;" and the likelihood of an examination could deter witnesses from coming forward. *Id.,* at 184, 476 F.2d at 1131. The resultant presumption against ordering an examination must be overcome by a showing of need.

▮ Here, as in *Benn & Hunt*, the challenged witness' testimony was crucial to the government's case. Also, as in *Benn & Hunt*, the challenged witnesses were members of discrete class, whose testimony we have recognized to present a particular danger of unreliability. *Benn & Hunt* concerned the testimony of a young retarded rape complainant. We have before us the testimony of admitted heroin users. In Godfrey v. United States, 122 U.S.App.D.C. 285, 353 F.2d 456 (1965), this court rejected the use of an instruction aimed at discrediting all *drug addicts, including the defendant*, simply because of their addiction. Nonetheless, the testimony of an addict

may be suspect. As we said in Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920, 922–923 (1966):

> Current medical knowledge indicates that use of narcotics often produces a psychological and physiological reaction known as an acute brain syndrome, which is a "basic mental condition characteristic of diffuse impairment of brain tissue function." The characteristic symptoms of the syndrome are impairment of orientation; impairment of memory; impairment of all *intellectual functions including comprehension, calculation, knowledge and learning;* impairment of judgment; and liability and shallowness of affect.
>
> * * * * * *
>
> The effects of narcotic use will vary depending on the amount of drugs taken, the degree of tolerance developed by the individual, and the idiosyncratic reaction of the person to the drugs. For this very reason, only by a hearing can it be determined whether any particular defendant is incompetent because of his use of drugs.

*See* United States v. Fowler, 151 U.S. App.D.C. 79, 465 F.2d 664, 665–666 (1972).

▮ The danger of unreliability is substantially increased by a factor present in this case and in *Kinnard* but not applicable to all the witnesses in *Godfrey*. The addict's particular vulnerability when he is a prosecution witness prompted us to require a cautionary instruction in *Kinnard*:

> [T]he addict-turned-informer [or prosecution witness] may have a special and very powerful motive to fabricate a case for his own benefit. 465 F.2d at 574.
>
> * * * * * *
>
> [A] government informer's addiction to narcotic drugs and his indictment for narcotics violations . . . increase the danger that he will color his testimony to place guilt on the defendant for his own benefit. 465 F.2d at 570; *see* United States v. Fowler, 465 F.2d at 666 (1972).

While there is no indication in this record that Hill or Robinson were under indictment,[4] their admissions of narcotics use and previous drug transactions does put them in much the same shoes *vis-a-vis* the government as the addict turned informer in *Kinnard*.

> [T]he addict lives in almost perpetual violation of one of several criminal laws, and this gives him a special status not shared by other criminal offenders. Together with the fact that he must have continuous contact with other people in order to obtain drugs, it also gives him a special exposure to police action and arrest. . . .

The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Narcotics and Drug Abuse, at 10, quoted at 465 F.2d at 571 n. 15.

■ Finally, the sought after examinations might well have shed some light on a number of unresolved but material questions; whether Hill was still addicted to or using heroin at the time of the trial;[5] whether Ms. Robinson was ever addicted; what was the extent of each witness' use; and, whether that use had impaired either witness' capacity to testify.

On the other hand, the challenged witnesses' testimony, while ambiguous at times, did present a comprehensive and believable narrative. More importantly,

that narrative was supported by overwhelming extrinsic corroboration, giving substantial independent assurance of its reliability. In addition, the witnesses' testimony about their narcotics use obviated the need to prove Hill's addiction or Ms. Robinson's involvement with heroin. That information alone should have sufficed to put the jury on notice that, to the extent the witnesses' testimony was uncorroborated, it should be weighed with caution.[6]

■ In *Benn & Hunt*, we found that the trial court had not abused its discretion by failing, *sua sponte,* to order a mental examination of the complaining witness. When faced with a factual situation much like the one before us today —where an examination was sought after the fact of the witness' addiction had been revealed to the jury—the 5th Circuit found no error in declining to order an examination in Gurleski v. United States, 405 F.2d 253 (5th Cir. 1968). Largely in view of the substantial corroborative evidence introduced by the government in this case, we cannot say that the trial court's refusal to order examinations amounts to an abuse of discretion.

### III

■ Appellant asserts that the court abused its discretion in allowing a police officer to testify that Hill and Robinson

4. *Kinnard* was concerned with paid addict-informers who infiltrated the narcotics market for the police under threat of prosecution. Hill and Robinson were not paid, they were not informers on a regular basis, nor were they under indictment. These distinctions, while relevant to the danger of unreliability, do not constitute such material differences as to obviate the danger. Their susceptibility, as admitted heroin users, to arrest and harassment presents a situation clearly analogous to that of the paid informer in *Kinnard*.

5. Hill testified that he was addicted at the time of the crime but was not using heroin by the time of the trial. His narcotics use at either time would be relevant to his competency and credibility. "At both times the pressures on an addict-turned-

informer would enhance his motivation to lie." United States v. Kinnard, 465 F.2d at 573, n. 32. Ms. Robinson also denied using at the time of trial and, like the informer in *Kinnard*, claimed to be an occasional user, but not addicted, at the time of the crime. 465 F.2d at 573.

6. This case was tried after *Godfrey, supra,* but before the decision in *Kinnard, infra.* Appellant's trial counsel did not request and the trial court did not give the instruction proposed in *Kinnard*. In view of the substantial corroboration here, we think it would serve no useful purpose to embark upon a discussion of whether a *Kinnard* instruction should have been given absent a request by counsel. *Compare* United States v. Kinnard, 465 F.2d at 573, *with* 465 F.2d at 579–580 (Leventhal, J., concurring).

did not seem to be under the influence of narcotics when they gave their statements to the police. Appellant relies primarily on the following language from Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (1966):

> [B]ecause lay observations will often be inaccurate, the fact that defense counsel did not think defendant incompetent, *although of evidentiary value,* can never be dispositive. 365 F.2d at 924 n. 11 (emphasis added).

Although the quoted material warns of the dangers of lay testimony such as that challenged here, it does not support appellant's claim that such evidence must be excluded. The government merely responds that this situation is analogous to a police officer giving an opinion, based on personal observation, as to whether a defendant was intoxicated.[7] We need not determine whether the trial judge properly weighed the probative value of the officer's testimony against its potential prejudicial effect. Even if its admission were error, the evidence went to the credibility of testimony for which there was substantial extrinsic corroboration, hence the error would have been harmless.

### IV

Appellant, age 20, was sentenced as an adult. As required by decisions of this court, the trial judge made an explicit finding that appellant would not benefit from Youth Act treatment.[8] The judge relied on a 5010(e) report recommending adult sentencing and stated additional reasons of his own not touched upon in the report. On balance, we conclude that those reasons bear the requisite present and visible rationality to Congressional objectives.

■ The report contains much evidence that appellant *would* benefit from Youth Act treatment. The classification officer wrote that appellant's "concern and responsibility for his family is a quality which this writer feels is worth developing." The clinical psychologist reported that:

> [W]ith intensive psychotherapy and constant supervision, it is possible to bring a stability into [Butler's] life which would make further criminal behavior unnecessary for him. In view of his youth and excellent innate intellectual potential, Mr. Butler is capable of making progress in a [long-term rehabilitative] program.

The classification committee concluded that:

> It is the staff's opinion that the subject's diligence toward his family could be a *motivating* force to his final rehabilitation. Because of the necessity for the subject to receive psychotherapy, education, and vocational school, as well as his being too sophisticated for this institution, [we] recommend sentencing as an adult.

The report indicates that appellant would derive significant rehabilitative benefit from treatment services such as educational programs, vocational training and psychotherapy.[9] And, it is likely that appellant's minimum adult sentence of 20 years will prove an insuperable bulwark to meaningful rehabilitation.

But we need not decide whether the 5010(e) report alone would support adult sentencing, since the trial judge did not rely solely on that report. He articulated independent reasons for finding appellant would not benefit from Youth Act treatment. The judge observed that appellant had committed a

---

7. Woolard v. District of Columbia, 62 A.2d 640 (D.C.Mun.App.1948).

8. *See, e. g.,* United States v. Reed & Hoston, 155 U.S.App.D.C. 198, 476 F.2d 1145 (1973); United States v. Coefield, 155 U.S.App.D.C. 205, 476 F.2d 1152 (1973).

9. It seems clear that the right to treatment under the Act includes educational and vocational training as well as some form of psychiatric counseling. United States v. Tillman, No. 71–1352 (D.C.Cir. June 6, 1973) slip op. at 11–14.

brutal and cruel murder, for which he was totally without remorse. He noted that appellant had admitted involvement in a pattern of serious criminal behavior. He found that appellant had neither any interest in nor saw any need for a change in his way of life. He noted that appellant had previously been committed to a youth institution, had the benefit of the services of that facility,[10] and did not benefit[11]. Appellant finally escaped from the institution by assaulting a guard and went back to the life of crime that ultimately led to the instant murder. The judge concluded from these observations that appellant was not only without rehabilitative motivation but would be so actively resistant to rehabilitation that he could not benefit from treatment under the Act. The judge also observed that appellant would pose a serious danger to the community despite Youth Act treatment and would pose a serious escape threat at anything but a maximum security institution. The judge thus supported his no-benefit finding with a reasoned explanation of why appellant is the "exceptional case" of an "incorrigible" offender.[12]

◼ Although some judges including, no doubt, members of this court, might have given greater weight to the rehabilitative potential indicated in the 5010(e) report, the scope of our review is limited. We must insure that a "complete, candid, and clear articulation" of reasons accompanies a denial of Youth Corrections treatment. United States v.

Tillman, No. 71–1352 (D.C.Cir. June 6, 1973) slip op. at 19. Those reasons must amount to more than a mere litany, which leaves us to conjecture about their meaning. United States v. Phillips, 156 U.S.App.D.C. 217, 479 F.2d 1200 (1973). Rather, the statement of reasons must demonstrate that the sentencing judge has taken "a hard look at the salient issues and focused on the value judgments inherent in his decision." United States v. Tillman, *supra,* slip op. at 19–20. The underlying premises must be fully explicated and the relevance of the stated reasons to the required no-benefit finding must be "present and visible."[13] We are satisfied from the record before us that the sentencing judge took that "hard look" and that he candidly stated his reasons for finding appellant would not benefit. The reasons, taken as a whole, meet the test of rationality in relation to Congressional objectives.

Accordingly, appellant's conviction and sentence are

Affirmed.

MacKINNON, Circuit Judge (concurring specially):

I limit my concurrence solely to the result reached. If appellant has any justifiable grounds for requesting a lesser sentence (which are not apparent on this record), the trial court has full authority to consider the motion and take appropriate action under Fed.R.Crim.P. 35.

10. The nature and extent of those services as well as the apparent reasons for their failure should be articulated. *See* United States v. Phillips, 156 U.S.App.D.C. 217, at 221, 479 F.2d 1200, at 1204 (1973). In the circumstances of this case, we do not find the absence of that articulation a fatal flaw in the sentencing proceeding.

11. United States v. Tillman, note 9, *supra,* slip op. at 16; United States v. Phillips, note 10, *supra,* 156 U.S.App.D.C. at 221,

479 F.2d at 1204; United States v. Coefield, note 8, *supra,* 155 U.S.App.D.C. at 208, 476 F.2d at 1155.

12. United States v. Phillips, note 10, *supra,* 156 U.S.App.D.C. at 219, 479 F.2d at 1202; United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 724–725 (1970).

13. United States v. Reed & Hoston, note 8, *supra,* 155 U.S.App.D.C. at 203, 476 F.2d at 1150.