Cynthia **HARRIS**, Appellant,

v.

**DISTRICT OF COLUMBIA**, Appellee.

No. 88–1574.

District of Columbia Court of Appeals.

Argued April 2, 1990.
Decided Dec. 9, 1991.

**22** 

Scott D. Arnopol, Washington, D.C., appointed by the court, for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before FERREN, Associate Judge, and NEWMAN * and BELSON,** Senior Judges.

BELSON, Senior Judge:

Appellant Cynthia Harris was convicted following a bench trial of driving under the influence of a drug in violation of D.C.Code § 40–716(b)(1) (1990 Repl.).[1] Harris appeals on two grounds: (1) that the trial court erred in admitting into evidence lay opinion as to whether she was under the influence of a drug; and (2) that there was insufficient evidence to support her conviction in the absence of expert testimony that the presence of drugs in her system impaired her driving ability. We affirm.

Officers Chambers and Grooms were riding in their scout car when they observed Harris's car, which was eastbound on Massachusetts Avenue, turn across the median line, cross the westbound traffic lane, strike the curb on the west side, and stop with the left front tire up on the sidewalk. The officers walked up to the car and discovered Harris in the driver's seat slumped over the steering wheel. Harris appeared to be dazed and disoriented. No one else was in the car. The officers spoke to Harris, but she was not able to respond. The officers did not observe injuries or blood,

nor did they detect an odor of alcohol on her. After about ten minutes, Harris began to talk, but she did not know her name, where she was, or what had happened. According to Chambers, "[s]he was in a talkative state of mind ... but nothing was really coming out that made any sense."

Officer Jones came to the scene in response to a radio assignment for an accident. When Officer Jones asked Harris what had happened, Harris started talking incoherently and with a slight slur. But rather than talking about what happened, Harris talked about Officer Jones' hair. Officer Jones noticed that Harris's eyes were slightly pink and glassy.

At trial, the three officers testified that based on their experiences dealing with persons under the influence of drugs, they believed that Harris was under the influence of some substance. Two of them opined that she was under the influence of drugs but not of alcohol, and the other thought it was either drugs or alcohol.[2] Harris agreed to take a "breathalyzer" test after she had been transported to the Traffic Division. It did not detect the presence of any alcohol in her system. A chemist from the Medical Examiner's office testified that a urine sample Harris had given following her arrest tested positive for cocaine and phencyclidine (PCP).

■ We find no merit in Harris's argument that the trial court erred in admitting into evidence lay testimony on the issue of drug impairment. In our view, the considerations that bear upon the admissibility of lay testimony on the issue of drug impair-

---

* Judge Newman was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on March 11, 1991.

** Judge Belson was an Associate Judge of the court at the time of submission. His status changed to Senior Judge on July 24, 1991.

1. D.C.Code § 40–716(b)(1), states in relevant part:

No individual shall, when the individual's blood contains .10 percent or more, by weight, of alcohol (or when an equivalent quantity of alcohol is contained in at least 2,000 cubic centimeters of his breath), or defendant's urine contains .13 percent or more,

by weight, of alcohol, or under the influence of intoxicating liquor or any drug or any combination thereof, operate or be in physical control of any vehicle in the District.

2. Specifically, Officer Chambers opined that Harris was "under the influence of a substance unknown at the time," but never thought that it was alcohol because of the absence of aroma. Officer Grooms believed that she was under the influence of a drug, and also concluded that she was not under the influence of alcohol because he neither saw nor smelled alcohol. Officer Jones thought Harris was under the influence of something, alcohol or drugs.

ment are similar to those that relate to the admissibility of lay testimony on the issues of alcohol intoxication and insanity. It has long been established in this jurisdiction that lay witnesses, including police officers, may testify to their opinion whether the driver of a vehicle appeared to be under the influence of alcohol. In *Woolard v. District of Columbia*, 62 A.2d 640, 640–41 (D.C.Mun.App.1948), this court stated:

> We do not overlook the general rule that an expert may not testify to his conclusions regarding facts from which the jury are capable of drawing their own conclusions. But we think this case is governed by the more applicable rule that even though one is not an expert he may give his opinion based on personal observations as to whether a person is intoxicated.

*Id.* (footnotes omitted).

Similarly, this jurisdiction permits lay persons to testify, based on their personal observations, as to whether a person appeared to them to be sane or insane. *See United States v. Pickett*, 152 U.S.App.D.C. 346, 348, 470 F.2d 1255, 1257 (1972). Furthermore, the Supreme Court has stated:

> In no other way than this can the full knowledge of an unprofessional witness with regard to the issue be placed before the jury, because ordinarily it is impossible for such a witness to give an adequate description of all the appearances which to him have indicated sanity or insanity.

*Turner v. American Security & Trust Co.*, 213 U.S. 257, 260, 29 S.Ct. 420, 421, 53 L.Ed. 788 (1909) (quoted in *Woolard, supra*, 62 A.2d at 641); *see also Carter v. United States*, 102 U.S.App.D.C. 227, 237, 252 F.2d 608, 618 (1957). *See generally* J. WIGMORE, EVIDENCE §§ 1933–1938 (1978) (discussing the admissibility of lay person's opinion as to another person's sanity).

The rationale for allowing lay opinion on whether an individual appeared intoxicated by alcohol or insane also calls for allowing lay opinion on whether an individual appeared to be under the influence of drugs. Some other jurisdictions have already approved the admission of lay opinion testimony in cases involving persons suspected of being under the influence of narcotics. *State v. Lesac*, 231 Neb. 718, 722, 437 N.W.2d 517, 519 (1989) (law enforcement personnel could give opinions that defendant was under influence of drugs because their opinions "were rationally based on those witnesses' perceptions and were obviously helpful to the determination of a fact in issue"); *State v. Lindley*, 286 N.C. 255, 258–59, 210 S.E.2d 207, 210 (1974) ("[A] patrol officer with five years' experience in enforcement of the motor vehicle laws ... is competent to express an opinion, based on the conditions he observed and on the knowledge gained from interrogation of defendant, that defendant was under the influence of some drug").

An officer who stops a vehicle for a moving violation and personally observes the driver is in a better position than the finder of fact to draw inferences and conclusions as to whether the driver was under the influence of drugs. While it may be objected that "[d]rugs other than alcohol can produce a confusing array of symptoms which cannot be sorted out without specialized training," *State v. Rifkin*, 140 Vt. 472, 476, 438 A.2d 1122, 1124 (1981), the trial court can deal adequately with this problem by requiring that a foundation be laid before a police officer is allowed to testify that the defendant appeared to be under the influence of drugs. A foundation can be laid for such lay opinion testimony by an officer who has observed the allegedly impaired driver by adducing testimony that the officer has had a reasonable amount of experience observing people who were under the influence of drugs.[3] The trial court must also satisfy itself that the officer has an adequate factual basis for an opinion regarding the condition of the particular defendant. *See Pickett, supra*, 152 U.S.App.D.C. at 349, 470 F.2d at 1258 (insanity).

---

**3.** We will not attempt to specify here precisely how much experience constitutes a reasonable amount, but leave that matter to the discretion of the trial judge.

We point out, parenthetically, that such lay opinion testimony is not within the category of expert testimony. This court has adopted a three part test governing the qualification of an expert witness: (1) The subject matter "must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman"; (2) the witness "must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth"; and (3) expert testimony is inadmissible "if the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert."

*Dyas v. United States,* 376 A.2d 827, 832 (D.C.), *cert. denied,* 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977) (quoting McCORMICK ON EVIDENCE, § 13 (E. CLEARY 2d ed. 1972) (emphasis omitted)). Thus, not only must the subject matter lend itself to expert opinion, the expert must be qualified in such fashion as to be able to render an expert opinion. *Ibn–Tamas v. United States,* 407 A.2d 626, 633 (D.C.1979), *appeal after remand,* 455 A.2d 893 (D.C.1983); *Gant v. United States,* 518 A.2d 103, 110 (D.C.1986); *Adams v. United States,* 502 A.2d 1011, 1020 (D.C.1986).

It is quite conceivable that a person could qualify under the foregoing test as an expert witness on the issue of whether an individual was under the influence of drugs at a particular time. But that does not affect our view that a layman may be competent to testify to a person's being under the influence of drugs just as a layman may be competent to testify concerning sanity or being under the influence of alcohol.

An officer who testifies concerning a condition like that attributed to appellant is testifying as an observer witness on the basis of his or her firsthand knowledge rather than as an expert. *See* MCCORMICK, *supra,* § 13.[4] The only additional foundation we require for lay opinion testimony that a person was under the influence of drugs is that the witness have had a reasonable degree of experience in observing persons who are under the influence of narcotics.[5]

Here, all three of the testifying police officers had experience dealing with individuals under the influence of drugs and each officer pointed to specific observations that led him or her to believe Harris was under the influence of some substance, possibly drugs. Officer Chambers, who had been with the police department for two years and seven months, testified that on more than fifty occasions he had been around persons who were under the influence of drugs. He stated that specific observations he made—that Harris did not know her name, where she was, or what happened, and that Harris was in a talkative state of mind but was not making any sense—led him to believe that Harris was under the influence of some substance. Chambers did not think the substance was alcohol because of the absence of the aroma of alcohol.

Officer Grooms, who had been with the police department more than two years, testified that on more than twenty occasions, he had been around persons who were under the influence of drugs. He believed that Harris was under the influence of some type of drug because Harris was disoriented and acting as though intoxicated, but he did not detect an odor of

---

**4.** We note that we have held in the past that a police officer should not be permitted to testify as a lay and expert witness in the same trial because this creates a substantial danger of bolstering the officer's lay testimony and would be highly prejudicial to the defendant. *Beach v. United States,* 466 A.2d 862, 865 (D.C.1983). That problem does not exist when the officer testifies as an observer witness who expresses a lay opinion.

**5.** A comparable foundation is necessary where a lay witness would testify as to whether a person is under the influence of alcohol. It appears that where that matter has not been explored, such a foundation has been assumed to exist. *See Durant v. United States,* 551 A.2d 1318, 1324 (D.C.1988) (lay person may render opinion as to alcohol intoxication "because alcohol intoxication is considered to be a matter of common knowledge").

alcohol, saw no alcohol, and observed no injuries. Thus, he concluded Harris was under the influence of drugs.

 Finally, Officer Jones, who had been with the police department for four years, testified that she had been involved in fifteen to twenty cases involving drug-related incidents where she had to "commit" the person involved.[6] According to Jones, she believed that Harris was under the influence of some substance, drugs or alcohol, because Harris talked around questions, wanted to talk about everything but what had happened, slurred her words, and had glassy pink eyes.

 We hold that, because an adequate foundation was laid, the trial court did not err in allowing Officer Grooms to testify that Harris appeared to be under the influence of drugs. Nor did the court err in allowing Officers Jones and Chambers to testify that when they encountered appellant the night of the incident they believed that Harris was under the influence of a substance, Jones indicating that it was either drugs or alcohol, and Chambers indicating that in his opinion it was not alcohol. We point out that we do not require any foundation of experience or familiarity with persons who had been using drugs where the witness will testify only that he or she had concluded that the defendant was under the influence of some substance, and had further concluded that the substance was not alcohol because of the absence of any specific indications of alcohol use such as an aroma or liquor bottle. It is only when the witness goes on to state an opinion that the defendant was under the influence of a drug (as distinguished from alcohol) that we require this particular foundation.

## II

 Harris next contends that the evidence was insufficient to convict her of driving under the influence of drugs because there was no expert testimony presented to show that the presence of

drugs in her system impaired her ability to drive a motor vehicle. According to Harris, expert testimony is required to support her conviction because otherwise there is no scientific standard with regard to whether the ability to drive is impaired by a given level of drug use. We are not persuaded by this argument. We hold that the nature of the evidence required to support a conviction for driving under the influence of a drug is not different from the sort of evidence required to support a conviction for driving under the influence of alcohol. In both situations, circumstantial evidence will suffice even though it does not specifically quantify the amount of the substance ingested and relate it to the ability to drive.

D.C.Code § 40–716(b)(1) (1990 Repl.) provides in pertinent part:

No individual shall, when the individual's blood contains .10 percent or more, by weight, of alcohol (or when an equivalent quantity of alcohol is contained in at least 2,000 cubic centimeters of his breath), or defendant's urine contains .13 percent or more, by weight, of alcohol, or under the influence of intoxicating liquor *or any drug* or any combination thereof, operate or be in physical control of any vehicle in the District.

(Emphasis supplied.)

 In *Washington v. District of Columbia*, 538 A.2d 1151, 1156 (D.C.1988), this court interpreted the above provision as setting forth two distinct types of drunk driving punishable by law: (1) the *per se* offense of driving while intoxicated, and (2) the offense of driving while under the influence. A person can be convicted of the *per se* offense by mere proof that he was operating a vehicle while his blood contained .10 percent or more alcohol (or while his urine contained .13 percent or more alcohol).

 Evidence that the defendant's driving ability was impaired is unnecessary for a conviction of the *per se* offense. A

---

**6.** Counsel for the government should have elicited more specific testimony from Officer Jones concerning the condition of the persons she had committed. Taken in context, her testimony indicated that they were under the influence of drugs.

conviction for driving under the influence, by contrast, can be supported by "an accumulation of evidence other than a test result showing .10 percent blood alcohol content, e.g., evidence of erratic driving by the accused, slurred speech, ödor of alcohol on the breath, and evidence of a blood alcohol content of .05 percent or more." *Id.; accord, Stevenson v. District of Columbia,* 562 A.2d 622, 624 (D.C.1989) (drag racing, slurred speech, odor of alcohol on the breath, bloodshot and watery eyes, and leaning on the car for support provided sufficient evidence to support conviction of defendant for driving under the influence of alcohol); *Price v. District of Columbia,* 54 A.2d 142, 144 (D.C.Mun.App.1947) (police officers' testimony as to the manner in which the car was driven, identification of defendant as the driver, and condition of defendant shortly thereafter was sufficient evidence to support conviction for operating a vehicle while under the influence of alcohol). It is not necessary for conviction that each such indication of the influence of alcohol be shown, but only a sufficient accumulation of them.

■ We are not persuaded that proof required to establish driving under the influence of drugs should be any greater than or any different from the proof required to establish driving under the influence of alcohol, save that it must relate to the particular substance involved. Although "there is not yet a scientific standard for when the ability to operate a vehicle is impaired by a given level of drug use," COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT TO THE COUNCILMEMBERS ON BILL 4–389, at 5 (May 5, 1982),[7] there is likewise no scientific standard for when the ability to operate a vehicle is impaired by a blood alcohol level *below* .10 percent. And yet conviction for

driving under the influence of alcohol (as distinguished from the *per se* offense) does not require expert testimony to establish the link between alcohol consumption and driving impairment; circumstantial evidence is sufficient.

There is no reason why the same level of proof should not suffice to support a conviction for driving under the influence of drugs. *See Griggs v. State,* 167 Ga.App. 581, 584, 307 S.E.2d 75, 78 (1983) (testimony that bus driver was driving in excess of speed limit causing the school bus to skid, that he was "talking out of his head," that he was "acting lightheaded," and that his eyes were dilated and bloodshot, together with lab test indicating that he had used marijuana, provided sufficient evidence to support conviction for driving under the influence of marijuana); *City of Wichita v. Hull,* 11 Kan.App.2d 441, 447, 724 P.2d 699, 703 (1986) (charge of driving while under the influence of drugs may be proven by circumstantial evidence that defendant consumed drugs and that he was driving erratically); *People v. Shapiro,* 141 A.D.2d 577, 577–78, 529 N.Y.S.2d 186, 187–88 (2d Dep't.), *appeal denied,* 72 N.Y.2d 1049, 531 N.E.2d 669, 534 N.Y.S.2d 949 (1988) (police officers' testimony that defendant was driving at erratic speeds and swerving, that he was fidgety, that his pupils were dilated, together with their observation of a vial containing white powder on the front seat of the car, provided sufficient evidence to support conviction for driving while under the influence of drugs). *But see State v. Rifkin, supra,* 140 Vt. at 476–77, 438 A.2d at 1124 (expert testimony required to prove that the influence of a particular drug was to such a degree that it rendered the defendant incapable of driving safely).[8]

---

7. We do not agree with Harris that this language from the legislative history of D.C.Code § 40–716(b)(1) is an indication that the statute requires expert testimony in each individual case to show that the quantity of drugs detected in a defendant's system is sufficient to impair the ability to operate a motor vehicle. To the contrary, the language quoted in the text above indicates that the legislature did not recognize any scientific ground upon which àn expert could base such testimony.

8. Our holding in *Durant v. United States,* 551 A.2d 1318 (D.C.1988), is of no assistance to Harris. In *Durant,* the trial court had allowed defendant's testimony to be impeached by medical records suggesting that defendant was under the influence of PCP at the time of the charged offense. *Id.* at 1327. This court reversed, holding that the medical records, by themselves, were not sufficient to establish that defendant's perception and memory were impaired, given

Here, the trial court found that Harris's vehicle had crossed the median line of a two-way street and went up on the opposite curb and that when the police officers approached Harris, Harris was incoherent, did not know where she was, did not realize that she was talking to police officers, and did not respond in a logical way. These findings, together with Harris's positive test results for PCP and cocaine and the opinion testimony given by the experienced police officers, provided sufficient evidence to support the trial court's conclusion that the presence of drugs in Harris's system impaired her ability to drive. On the facts of this particular case, no expert testimony was required.

*Affirmed.*

NEWMAN, Senior Judge, concurring:

I join the opinion of Judge Belson fully. I write separately to state my view that it is time for this court to reevaluate the entire area of our treatment of opinion and expert testimony and to substitute therefore Article VII of the Federal Rules of Evidence. Likewise, in the area of expert scientific testimony, we should join those courts, both federal, *see, e.g., United States v. Downing,* 753 F.2d 1224 (3d Cir. 1985) and state, *see, e.g., State v. Williams,* 388 A.2d 500 (Me.1978) which reject *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013 (1923) as the appropriate test to evaluate the admissibility of "novel" scientific evidence. Like those courts, we should replace the *Frye* test with one focusing on relevance and reliability.

that it was inferable that there were only trace amounts of PCP in the urine. *Id.* at 1326. While it might be argued that there is a more compelling reason for requiring expert testimony to establish the link between drug usage and impairment of the ability to perceive and recall events because such an impairment may not be as readily observable as the physical condition of a person driving under the influence of a drug, this court in *Durant* expressly declined to do so. *Id.* at 1328. We observe, however, that expert testimony might impart to otherwise inadequate medical record evidence sufficient probative value to permit its use as extrinsic impeachment evidence.