990 F.2d 1377
 301 U.S.App.D.C. 107
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Arnold GRIFFITH, Appellant.
 No. 91-3317.
 United States Court of Appeals, District of Columbia Circuit.
 March 29, 1993.
 
 Before: MIKVA, Chief Judge, WILLIAMS and SENTELLE, Circuit Judges.
 JUDGMENT
 Per Curiam.
 
 
 1
 These appeals were considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED by this Court that in No. 91-3317, the judgment of the district court is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven (7) days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Arnold Griffith was convicted of possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). The jury did not reach a verdict on the charge of unlawful employment of a minor to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 861.
 
 
 5
 The government's principle witness, Ms. Michelle Edwards, who was 15 years old at the time of the offense, testified that Mr. Griffith offered to pay her to carry drugs on a bus from New York City to Winston-Salem, North Carolina. On the night they were to leave, she met Mr. Griffith at his grandmother's home, where she watched him package the crack in ziplock bags, and then place the bags inside a baby powder bottle with some baking powder to eliminate the drug odor. Mr. Griffith put the baby powder bottle and Ms. Edwards's personal items into a black bag and gave Ms. Edwards $100. He had no luggage of his own.
 
 
 6
 Before going to the bus station, he instructed her to sit away from him on the bus, say nothing, and act as if they did not know each other. He also told her to take a cab to a specified location upon arriving in Winston-Salem, where they would exchange the drugs for money. Finally, he told her he planned to fly back to New York because he had a traffic court date the following day.
 
 
 7
 On the way to the bus terminal in a taxicab, they stopped at the home of Tanya Footman, a friend of Ms. Edwards, purportedly so that Ms. Edwards could return something to her friend. When Ms. Footman heard of the plan to carry drugs, she became angry and beseeched Ms. Edwards not to go. She did not listen. After a second stop at a deli, Mr. Griffith and Ms. Edwards proceeded to the bus station. Mr. Griffith gave the black bag to Ms. Edwards and told her to purchase her own ticket. He followed closely behind, and they bought sequentially numbered bus tickets, purchased only one minute apart.
 
 
 8
 When the bus stopped in Washington, D.C., Ms. Edwards came to the attention of Immigration and Naturalization Service Agent Gerald Crispino. When he approached her, she said she was traveling alone. She said she was not carrying drugs or weapons, and consented to a search of the black bag. Agent Crispino found the baby powder bottle and turned it over to his partner, Sergeant Brennan, who discovered the drugs inside.
 
 
 9
 Ms. Edwards was taken off the bus and arrested. When asked if she was carrying the drugs for someone, she replied, "for Arnold." She told the officers that "Arnold" was on the bus, and she returned with them to the bus and identified Mr. Griffith, who was also arrested. Ms. Edwards pled guilty in the D.C. Superior Court to possession of cocaine and was sentenced to one year of probation.
 
 
 10
 Mr. Griffith argued in his defense that Ms. Edwards, who recognized him on the bus because they lived in the same neighborhood, made up the story that she was working for him in the hopes of receiving lenient treatment. He presented one witness, who testified that he had driven Mr. Griffith to the bus station in New York that night, and also on Mr. Griffith's good character. The government presented Ms. Footman as a rebuttal witness. She related the story about Ms. Edwards stopping on the way to the bus terminal and telling Ms. Footman about her intention to carry drugs for Mr. Griffith. As noted above, the jury found Mr. Griffith guilty of possession with intent to distribute 50 grams or more of cocaine base, but did not reach a verdict on the charge of unlawful employment of a minor to possess with intent to distribute cocaine base.
 
 
 11
 Mr. Griffith raises four issues on appeal. He first argues that the prosecutor made improper rebuttal argument that warranted a mistrial. In the course of rebuttal argument, the prosecutor responded to the suggestion that Ms. Edwards might be an unreliable witness because she was cooperating with the government to obtain lenient treatment:
 
 
 12
 [The defense says] that Michelle Edwards knows where her bread is buttered.
 
 
 13
 Let me tell you, ladies and gentlemen, she doesn't have any butter.... She had pleaded guilty. She had been sentenced. There is [sic] absolutely no promises whatsoever made.... There's no benefit to her coming up here and pointing the finger at Arnold Griffith. No benefit whatsoever.
 
 
 14
 ....
 
 
 15
 She knows she did something wrong, and she accepted responsibility for it. You cannot dismiss her testimony. You simply can't.
 
 
 16
 Trial Transcript III at 59. Returning to the same theme later in the rebuttal argument, the prosecutor stated as follows:
 
 
 17
 So, ladies and gentlemen, the case boils down to Michelle Edwards. Michelle Edwards, as I told you before, had accepted her responsibility. She pleaded guilty to possession of cocaine, and she was sentenced in Court, in Superior Court.
 
 
 18
 Arnold Griffith has not accepted responsibility. Trial Transcript III at 62. At that point, defense counsel interrupted with an objection, which the court sustained in conjunction with an instruction for the jury to disregard the last comment. The court denied Mr. Griffith's subsequent motion for a mistrial.
 
 
 19
 Mr. Griffith argues that the rebuttal remarks warranted a mistrial on three separate grounds: (1) expression of the prosecutor's personal opinion regarding guilt; (2) comment on Mr. Griffith's failure to testify; and (3) use of a co-defendant's guilty plea as substantive evidence against the defendant. The first two grounds are easily dismissed. The prosecutor's comment that Mr. Griffith "has not accepted responsibility" does not amount to an expression of a personal opinion regarding guilt. The prosecutor made no explicit reference to his personal opinion, and the comment is no more an expression of opinion than the commonplace request from a prosecutor that the jury find the defendant guilty.
 
 
 20
 Similarly, the prosecutor's comment did not go to Mr. Griffith's decision not to testify because the language used was not "manifestly intended or ... of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Williams, 521 F.2d 950, 953 (D.C.Cir.1975) (quoting Knowles v. United States, 224 F.2d 168, 170 (10th Cir.1955)) (additional citations omitted). The prosecutor made a perfectly proper reference to Ms. Edwards's plea in an effort to rehabilitate her, followed by an admittedly improper reference to the fact that Mr. Griffith had not similarly "accepted responsibility." This appears to have been an inartful attempt to use similar language in talking about two distinct subjects: Ms. Edwards's plea and Mr. Griffith's guilt. The prosecutor did not make an explicit reference to a failure to testify, and the comment could more naturally be understood as a mere request to find the defendant guilty. Moreover, the district court's instruction to the jury to disregard the statement was a reasonable means of safeguarding against the small risk of undue prejudice.
 
 
 21
 Mr. Griffith's third argument with respect to the prosecutor's rebuttal is that the government improperly attempted to use Ms. Edwards's guilty plea as substantive evidence against Mr. Griffith. He argues that the district court erred in denying a motion for mistrial, and in the alternative, for failing to issue a cautionary instruction on the proper use of the guilty plea.
 
 
 22
 Neither of these arguments was raised below, and we therefore limit our review to plain error. See United States v. Thomas, 896 F.2d 589, 591 (D.C.Cir.1990). Mr. Griffith argues that his general objection to the prosecutor's comment was sufficient to preserve this ground for mistrial because the basis of his objection was clear from the context. The record belies this contention. Mr. Griffith moved for mistrial based on the comment that Mr. Griffith "has not accepted responsibility." When the court stated in response that this was "not a comment on [Mr. Griffith's] silence," defense counsel responded with the general statement, "It's completely improper." The district court clearly understood the objection to be aimed at an alleged comment on Mr. Griffith's failure to testify, and the general statement by defense counsel did not suggest alternative grounds for the mistrial motion. As for the limiting instruction, Mr. Griffith concedes that he never requested one. Thus, we review the district court's decision denying the motion for mistrial, and failing to issue a limiting instruction sua sponte, for plain error.
 
 
 23
 A plain error must be so gravely prejudicial as to result in a miscarriage of justice if not corrected on appeal. United States v. Frady, 456 U.S. 152, 163 n. 14 (1982). The error in this case, if there was error at all, falls far short of this standard. The mere introduction of the guilty plea for the purpose of rehabilitating Ms. Edwards cannot be seriously challenged. Rather, the possible error is in the alleged use of the plea in the rebuttal argument, and in the district court's failure to issue a limiting instruction on the proper use of the testimony. As noted above, the government was not arguing that "birds of a feather are flocked together," see Krulewitch v. United States, 336 U.S. 440, 454 (1949) (Jackson, J., concurring), or otherwise asking the jury to infer Mr. Griffith's guilt from Ms. Edwards's guilty plea. See United States v. Tarantino, 846 F.2d 1384, 1404-05 (D.C.Cir.1988). The likelihood that the jury would have used Ms. Edwards's guilty plea as substantive evidence against Mr. Griffith based on the prosecutor's comment is virtually nil. Moreover, the district court sustained an objection to the comment and instructed the jury to disregard it, and issued a general instruction that argument of counsel is not evidence. These steps were more than adequate to protect against the small risk of undue prejudice, and the failure to issue an additional instruction sua sponte was not plain error.
 
 
 24
 Although we reject Mr. Griffith's contention that the prosecutor's comment warrants a mistrial in this case, we are nonetheless troubled by impromptu arguments by counsel which tread dangerously close to conduct that could warrant a mistrial in the name of spontaneity and rhetorical flourish. This Court has recently been faced with other appeals focusing on the same problem. Although we understand that memorized argument is no more effective before a jury than before this Court, we nonetheless caution government and defense counsel--both of whom are "repeat players" before this Court--that opening and closing arguments should be planned carefully enough to avoid these disturbing lapses.
 
 
 25
 Mr. Griffith's second claim is that the district court should have ordered a psychological exam of Ms. Edwards, or at least conducted an in camera inspection of her mental health records to determine whether they contained potential impeachment material. He also argues that the government was obligated to search the files for exculpatory Brady material. Mr. Griffith moved for a psychological examination of Ms. Edwards prior to the trial based on two allegations: (1) that she had attempted suicide while in custody at a juvenile detention center after her arrest; and (2) that she had "been a behavioral problem and manifested signs of emotional problems" since her return to New York.
 
 
 26
 The district court denied the motion, but stated that cross-examination concerning Ms. Edwards's "prior mental history" would be allowed. The court also denied a request to conduct an in camera review of Ms. Edwards's D.C. Youth Services Administration psychological records for purposes of determining whether they would be useful for impeachment. The court stated that there was no evidence that the records contained any impeachment material, and that a strong showing would be required before the request would be granted.
 
 
 27
 Determinations regarding witness competency, and the need for psychological examinations of witnesses, are left to the sound discretion of the trial court. United States v. Heinlein, 490 F.2d 725, 730-31 (D.C.Cir.1973); United States v. Butler, 481 F.2d 531, 533 (D.C.Cir.1973). Likewise, whether to order the production of medical records is within the trial court's discretion. United States v. Crosby, 462 F.2d 1201, 1202 (D.C.Cir.1972). Mr. Griffith presents no evidence that the failure of the district court to order an exam in this case was an abuse of discretion. Mr. Griffith presented no sound basis for his allegations regarding Ms. Edwards. In any case, this court has stated that attempted suicide does not indicate an increased propensity to lie. United States v. Brooks, 966 F.2d 1500, 1503 (D.C.Cir.1992). Thus, Mr. Griffith did not suggest that Ms. Edwards suffered from any mental ailment which would place her credibility in doubt. In the absence of a well-founded allegation of some mental illness relevant to credibility, the district court had no reason to order an examination or conduct an in camera review of the records.
 
 
 28
 For the same reasons, no Brady issue is raised by the failure of the prosecutors to search the files. There is no sound basis for believing that the records contained potentially exculpatory material. See Brooks, 966 F.2d at 1503-04. In any case, it appears that the documents were not within the control of the United States Attorney's Office or another government office that would allow the prosecutors easy access. See Brooks, 966 F.2d at 1503 (duty to search limited to files maintained by branches of government closely aligned with the prosecution).
 
 
 29
 Mr. Griffith's remaining claims may be easily dismissed. His third claim is that the district court erred in denying a mistrial based on improper testimony by Ms. Edwards. During her testimony, Ms. Edwards made reference to the fact that Mr. Griffith had to fly back to New York from Winston-Salem because he had a court date the following day. The district court ascertained outside the presence of the jury that the court date was probably in traffic court. The district court denied Mr. Griffith's motion for mistrial, but told the jury that the court appearance mentioned by Ms. Edwards related to a minor traffic incident. The decision on whether to grant a mistrial in this circumstance is left to the discretion of the district court. United States v. Tarantino, 846 F.2d 1384, 1413 (D.C.Cir.1988). Informing the jury that the court date was related to a traffic violation was sufficient to reduce any possible undue prejudice to a de minimis level.
 
 
 30
 Mr. Griffith's final argument is that Ms. Footman's rebuttal testimony--regarding Ms. Edwards's stop on the way to the bus station and their argument over whether to carry the drugs--was improper because it did not rebut the testimony of Mr. Griffith's friend that he drove Mr. Griffith to the bus station. Mr. Griffith is correct that the rebuttal evidence did not directly contradict the testimony of Mr. Griffith's witness, but the testimony did rebut the defense theory that Ms. Edwards made up the story that she was working for Mr. Griffith after seeing him on the bus. Furthermore, assuming arguendo that the Footman testimony was not truly rebuttal, and could have been offered in the government's case-in-chief, Mr. Griffith offers no convincing reason to believe that the order of proof prejudiced his case. Thus, we find no error in allowing the rebuttal testimony of Ms. Footman.
 
 
 31
 The judgment is affirmed.